Carrol S. Walsh, J.
Motion by defendant for an order suppressing evidence seized on the grounds that it was obtained as the result of an illegal search and seizure and in violation of the constitutional rights of the defendant.
On January 31, 1975, defendant was a patient in the Nathan Littauer Hospital, Gloversville, New York, occupying a private hospital room. On that date, and in that room, the defendant was arrested by a State Police officer, acting in an undercover capacity, and charged with gambling violations. He was subsequently indicted by the Grand Jury of this county in a three-count indictment charging him with possession of gambling records in the first degree; possession of gambling records in the second degree; and promoting gambling in the second degree.
It is undisputed that the administrators and other authorized personnel of the hospital obtained information that the defendant was carrying on illegal bookmaking and gambling activities in his room, and that this information was also obtained by the State Police. On or about January 30, 1975, a State Police officer, acting undercover, was assigned to the hospital with the knowledge and consent of the hospital authorities and was given hospital duty as a porter, requiring him to go in and out of the hospital rooms for the purpose of cleaning them. The role of the officer was investigative. The undercover police officer, concealing his true identity, went about his duties as a porter which included his entering *800 defendant’s room from time to time in the performance of same. While so engaged, and while in the room, and in the presence of the defendant, the officer overheard the defendant taking bets over the phone, which defendant had had installed, and observed the defendant making notes on slips of paper which he placed on a table at the side of his bed. The undercover officer thereupon revealed his true identity, placed the defendant under arrest and seized the gambling records.
The defendant contends that the entry of the police officer under the circumstances was an illegal invasion of the private room of the defendant and an unconstitutional invasion of his privacy.
The Fourth Amendment to the Constitution of the United States as well as section 12 of article I, of the New York State Constitution protects against government intrusion upon the sanctity of a man’s home and the privacies of life. In fact, wherever a man may be, he is entitled to know that he will remain free from unreasonable searches and seizures. (Katz v United States, 389 US 347.) This has been held to mean and apply to, in addition to a man’s home, his office, his hotel or motel room, even a telephone booth, and I hold it applies likewise to a man’s private room in a hospital. However, not every entry without a warrant, search or arrest, is prohibited by law, and it requires an examination of the facts and circumstances in each and every case and situation to determine whether the entry was legal or was in fact a trespass. An occupant can break the seal of sanctity and waive his right to privacy in the premises. This is accomplished when the occupant invites another to enter the premises or consents to the entry. A private room in a hospital is comparable to a room in a hotel or motel where permission is granted, express or implied, to the entry of maids, janitors or repairmen in the performance of their duties. By submitting oneself to the care of a hospital, one subjects himself to the rules, regulations, customs, practices, and procedures of that hospital, all of which are customarily promulgated and exist and are carried out for the protection, care, health and recovery of the patient. Certainly the entry from time to time into one’s hospital room, of nurses, doctors, orderlies, janitors or porters, technicians, dieticians and the like, is not only necessary but anticipated, for which consent is certainly implied, and may, under the circumstances of entering the hospital, as a patient, be considered express. Thus, a patient in a hospital opens his *801 room to those required by the very nature of the reason for his being there to enter in the performance of their duties. Their entry cannot be considered an intrusion. Thereafter, and in their presence, what a patient knowlingly exposes to their hearing or view is not a subject of Fourth Amendment protection.
The real issue is whether or not, in the absence of any warrant, the consent of a patient is vitiated as to a police officer acting in an undercover capacity as a hospital porter from entering his room, because of the deception. I hold that under these circumstances it is not, and that the entry of the officer was legal. He was on the premises for the purpose of investigation only, a lawful police pursuit approved by the courts. The necessity for undercover police activity is recognized and the courts have long acknowledged that in the detection of many types of crime, the government is entitled to use decoys and to conceal the identity of its agents. (Lewis v United States, 385 US 206.) The police, in order to obtain evidence, must at times use artiface and stratagem, stealth and strategy. (Sorrells v United States, 287 US 435; People v Troy, 70 Misc 2d 799.) Evidence obtained by law enforcement officers using the subterfuge of hiding their identity in order to pose as someone else is admissible. (See Benson v People of State of California, 336 F2d 791.) Misrepresentation of identity in order to gain admittance is not a breaking within the meaning of the statute. (Leahy v United States, 272 F2d 487.) Neither precedent, public policy nor logic bars the use of deception to gain peaceable entry into a private habitation. It is a compelling circumstance that without resort to such subterfuge it would be virtually impossible to penetrate the facade of respectability which hides such activities as gambling, prostitution, ABC violations and narcotics. (People v Lawery, 43 Misc 2d 1084.)
In the instant case, the officer, in the guise of a porter, was invited by defendant into his hospital room for the specific purpose of permitting the officer, as a porter, to perform the necessary duties thereof. The officer, even though unknown by the defendant as such, but in the same manner as anyone else authorized and required to enter the room, may accept the invitation to enter for the very purposes contemplated by the defendant. This constitutes no breach of privacy, nor did the pretense result in any breach of privacy. The officer during any visit he made to defendant’s room neither saw nor heard *802 anything other than what the defendant exposed to him, nor did he engage in any general search. Any statements, acts or conduct which one exposes to the "plain view” of outsiders are not protected because no intention to keep them to himself has been exhibited. (Mr. Justice Harlan in Katz v United States, supra.)
The taking of the bets over the telephone and recording the same on slips of paper, obviously an illegal bookmaking activity, conducted in the presence of the police officer, legally on the premises, constituted the commission of a crime in his presence, warranting the officer to immediately place the defendant under arrest and to seize all of the contraband which was on the premises, as an incident to the arrest. The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted. (Carroll v United States, 267 US 132; Weeks v United States, 232 US 383; Smith v United States, 357 F2d 486.)
I do not find a violation of any constitutional right or privilege of the defendant and his motion to suppress the evidence seized is denied, the court deeming no hearing necessary.