**Robert Scott HAZEL and Barbara Jean Hazel, Appellants,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Nos. 91–SC–896–MR, 91–SC–1041–MR.

Supreme Court of Kentucky.

June 25, 1992.

As Amended Aug. 6, 1992.

J. David Niehaus, Daniel T. Goyette, Deputy Appellate Defenders of the Jefferson Dist. Public Defender, Louisville, for appellants.

Chris Gorman, Atty. Gen., Lana Grandon, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

SPAIN, Justice.

Robert Hazel and his wife, Barbara, appeal as a matter of right their judgments of conviction. In a joint trial, Robert was convicted by a Jefferson County jury of first-degree rape, three counts of first-degree sodomy, use of a minor in a sexual performance, sexual abuse, second-degree unlawful transaction with a minor, and PFO II, for which he received a total sen-

tence of forty years. Barbara received a total sentence of thirty-three years for her conviction on two counts of first-degree sodomy, use of a minor in a sexual performance, and first-degree sexual abuse.

Robert and Barbara were married in 1984. Living with the appellants was C.H., Barbara's daughter from a previous marriage. In 1985, local authorities were contacted and a child abuse investigation was conducted. Seven-year-old C.H. told the investigating officer that she had been sexually abused by her stepfather. Medical evidence from the 1985 investigation revealed that C.H.'s external genitalia were red, swollen, and puffy; that she had no hymen; and that her vaginal opening was large for a child her age. C.H. also exhibited an abnormal fear of men and was, in fact, hysterical at the time of her physical examination. C.H. informed the doctor that a male had put his "thing" in her and had also inserted his finger in her sometime in June of 1985. When Barbara was informed by the police that their examination revealed sexual abuse, she refused to prosecute. The police tried to contact Barbara several times in 1985 but learned in January 1986 that C.H. had been withdrawn from school. The family moved to Florida, then to Georgia, and thereafter to New Albany, Indiana. The family moved back to Louisville, Kentucky, in 1987.

On November 30, 1987, a warrant was issued for the purpose of searching the appellants' residence for marijuana and cocaine. Marijuana was found in the bottom drawer of a bureau. Continuing to search for drugs in the next drawer above, the officer came across approximately fifty loose photos. The first photo seen by the officer was of a nude adult male, who was determined to be Robert Hazel, and other photos were visible without their being disturbed. The officer continued to look for drugs in the drawer by lifting up the photos. After a photograph depicting an adult female performing cunnilingus on a young female came into the officer's view, he examined the other photographs, several of which appeared to show sexual acts by the appellants with a minor. Consequently,

the officer seized the drugs and photos along with a Polaroid camera.

While the police were executing the warrant, Barbara coincidentally called the house. The police told Barbara that there was sufficient evidence to arrest her and that she should come to the house. However, she did not, and an FBI flight warrant was obtained against both her and Robert. An indictment was subsequently returned by a grand jury and the Hazels were eventually arrested and convicted.

A suppression motion was made by defense counsel on the first day of trial and a hearing was held. Defense counsel argued that it was not apparent that the first photograph seen by the officer of a nude male was "per se" illegal or depicted an unlawful act, and that any subsequent search was invalid. The Commonwealth argued that the search was made pursuant to a valid warrant and that the photographs were found in plain view. The trial court found that the observed photographs of the child were suggestive to the officer of illegal acts. Moreover, the search warrant authorized the officer to open the drawer and to pick up the photographs to determine if any illegal substance was under or mingled with them. In so doing, the trial court stated, the officer became aware of the photographs the Commonwealth would seek to introduce at trial. Thus, the photographs were admissible as evidence since they were the product of a legal search.

At trial, C.H. testified that on numerous occasions, Robert had placed his finger and his penis into her vagina. C.H. also testified that Barbara would touch her while Robert took photographs of the activity. According to C.H., her parents used a Polaroid camera to take photographs of various sexual acts involving C.H. and her parents. At trial, C.H. identified the photographs and said that Robert had taken them. C.H. further testified that Robert had threatened that he would either hurt or kill C.H.'s grandmother if C.H. ever told. She admitted that she told the "ladies" who interviewed her in November 1987 that neither parent had ever inappropriately

touched her and that she did not know who was in the photographs that the police found, but explained that she told them this because she was afraid.

A young friend of C.H., M.H., testified that she had observed Robert in the bathroom trying to get C.H. to play with his penis, although C.H. refused. M.H. also saw Robert put a finger into C.H.'s vagina. On another night, Barbara took M.H. into the living room and tried to persuade M.H. to allow Barbara to perform cunnilingus on her. M.H. refused. On still another occasion, Robert and Barbara tried to get C.H. and M.H. to pretend they were adults and to perform sexual acts with one another. C.H. and M.H. both refused.

Robert and Barbara both testified at the trial and denied all charges of sexual misconduct. They explained that the photographs were of Barbara and an eighteen-year-old nightclub dancer named Tina and had been taken to be sold to an unnamed man for $2,500. Both testified that Tina was a very small person. Barbara explained that the absence of pubic hair on Tina was the result of compliance with a California nightclub law. Robert admitted knowledge of the photos and their location in the bureau but explained that he had them because extra copies were made for him.

■ Appellants' sole assignment of error is that the trial court improperly allowed into evidence the admission of the seized photographs and that the photos should have been suppressed since their discovery failed to meet the requirements of the "plain view" doctrine. Their reasoning is that the first photograph discovered by the police of a nude male was not indicative of criminal activity and therefore any further search of the drawer was invalid.

The Commonwealth disagrees with this assertion, maintaining that the officer's discovery of the photos did meet the requirements of the "plain view" doctrine and that the seizure of the photographs resulted from a valid search.

This Court agrees with the Commonwealth. The Fourth Amendment of the United States Constitution and Section Ten of the Kentucky Constitution provide safeguards against an unwarranted and unreasonable search and seizure by the state. Through the years, however, the courts have allowed several exceptions for seizures without warrants—one of these being evidence found within "plain view." *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

Several elements must exist for this exception to be allowed. First, the law enforcement officer must not have violated the Fourteenth Amendment in arriving at the place where the evidence could be plainly viewed. Second, "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must have a lawful right of access to the object itself." Finally, the object's "incriminating character must also be 'immediately apparent.'" *Id.,* at 2038; *Cf. Com. v. Johnson,* Ky., 777 S.W.2d 876, 879 (1989). Justice Stewart, writing for the majority in *Coolidge,* added a fourth limitation on the plain view doctrine, but this requirement did not represent the majority view. The "inadvertent discovery" element required the discovery of the evidence in plain view to be inadvertent. *Coolidge, supra,* 91 S.Ct. at 2040.

The U.S. Supreme Court recently reiterated the requirements of the plain view doctrine in *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), and expressly rejected the "inadvertent discovery" requirement set forth in the plurality opinion of *Coolidge.* The question of "inadvertent discovery" does not present an addressable issue in this case. Even if it were an issue, the U.S. Supreme Court, after *Horton,* no longer regards it as a requirement. We shall follow their lead.

In this case, the officer gained access to the appellants' premises with a properly executed warrant to search for marijuana and cocaine. The discovery of the photos occurred in the course of a valid search for drugs. It is undisputed that the officer had a right to inspect the bureau and its contents for drugs. The officer reasonably believed that illegal drugs might be found in any of the drawers to the bureau, and

that drugs could have been hidden by objects, such as photographs. In fact, drugs were discovered in the bottom drawer of the same bureau which contained the photographs. The U.S. Supreme Court and this Court have both ruled that a lawful search of fixed premises generally extends to the entire area in which the object of the search may be found, including the authority to search through drawers, chests, closets, and containers where that object may likely be found. *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Estep v. Commonwealth,* Ky., 663 S.W.2d 213 (1983).

The nature of the subject matter of the photographs made it immediately apparent to the officer that some criminal activity had occurred. It is irrelevant that the top photograph did not depict or was not indicative of criminal activity since the investigating officer had a right to search under the photographs for the presence of marijuana or cocaine. *Estep, supra.* The "plain view" doctrine was invoked at the time the officer saw the photograph of Barbara performing oral sex on her daughter. *Horton, supra.* The remaining photographs were then properly reviewed by the officer and, thereafter, seized.

Regardless of the plain view doctrine, it was inevitable that the officer would have obtained sufficient evidence to initiate the charges for the sexual offenses since the police had information from the 1985 investigation that Robert was sexually abusing his stepdaughter. This information came from the victim, a source independent of the 1987 search and seizure in which the photographs were found. *Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984); *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

The decision of the trial court to allow the introduction by the Commonwealth of the photographs into evidence was supported by substantial evidence and is conclusive on appeal. RCr 9.78. There was no error.

The judgments of conviction are affirmed.

All concur.