Frederick Carl KRAUSE, III, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2004–SC–1009–DG.

Supreme Court of Kentucky.

Oct. 19, 2006.

Rehearing Denied Dec. 21, 2006.

Jeremy Ian Smith, Paducah, for Appellant.

Gregory D. Stumbo, Attorney General, Courtney J. Hightower, Todd D. Ferguson, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for Appellee.

Opinion of the Court by Justice GRAVES.

Appellant, Frederick Carl Krause, III, entered conditional guilty pleas in McCracken Circuit Court to First Degree Possession of a Controlled Substance, Cocaine; Use/Possession of Drug Paraphernalia, Second Offense; and Possession of Marijuana. For these crimes, Appellant was sentenced to three days' imprisonment and two and one-half (2½) years of probation. Pursuant to his conditional pleas, Appellant took a direct appeal to the Court of Appeals. RCr 8.09. In an unpublished opinion, the Court of Appeals affirmed his convictions in all respects. *Krause v. Commonwealth*, 03–CA–002092–MR (rendered October 29, 2004). Appellant filed a petition for discretionary review in this Court, which we granted. CR 76.20. For the reasons set forth herein, we reverse the Court of Appeals' opinion, vacate Appellant's convictions and sentence, and remand for further proceedings.

The trial court's findings of fact in this case, while sparse, are unmistakably clear. The trial court found that Trooper Manar of the Kentucky State Police had arrested a subject for possession of cocaine. The subject told Trooper Manar that he obtained the cocaine from a house at which Appellant and his roommate, Joe Yamada, resided. Trooper Manar desired to go to the residence and search it but did not believe he had probable cause to obtain a search warrant. Because he knew that the

residents would not "consent to a search for drugs," Trooper Manar "fabricated a false story that he believed would more likely result in the residents' consent to search."

Accompanied by one or two other law enforcement officers, Trooper Manar knocked on Appellant's and Yamada's door around 4:00 a.m. When one of the residents, most likely Appellant, opened the door, Trooper Manar stated that a young girl had just reported being raped by Yamada in the residence. He asked if he could look around in order to determine whether her description of the residence and its furnishings was accurate. The trial court found that Trooper Manar "knew there would be no such evidence because he knew there was no assault. His intention was to gain consent to search for drugs."

Despite finding that "the ruse employed [by Trooper Manar] raises serious Constitutional rights questions and is not an appropriate police practice," the trial court ultimately concluded "that Defendants voluntarily consented to a search for evidence of an assault." The trial court speculated that "[p]ermission to search for evidence of an assault may well be a much narrower search than for drugs" because "[d]rugs may be secreted in places that evidence of an assault would not likely be found." However, because the drugs in this case were found in plain view during this otherwise voluntary search for evidence of a sexual assault, the trial court concluded that the evidence was constitutionally obtained. The Court of Appeals affirmed,[1] holding simply that "the trial court was correct in denying Krause's request to suppress the evidence against him as the product of a warrantless search."

On appeal to this Court, the sole issue for our consideration is whether the consent given by Appellant and his roommate was constitutionally valid. In *Cook v. Commonwealth*, 826 S.W.2d 329 (Ky.1992), this Court stated that "consent is one of the exceptions to the requirement for a warrant." *Id.* at 331 (citing *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)). We further indicated that the "test for determining if consent is constitutional is set out in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)." *Id.*

■ In *Schneckloth, supra,* the Supreme Court held that "the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means ... [f]or, no matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed." *Id.* at 228, 93 S.Ct. at 2048. Whether consent is the result of express or implied coercion is a question of fact, *id.* at 227, 93 S.Ct. at 2048, and thus, we must defer to the trial court's finding if it is supported by substantial evidence. RCr 9.78.

In this case, the trial court specifically found that Appellant and his roommate did not and would not give consent to search for drugs. Thus, Trooper Manar needed to procure consent to search for something else if he was to achieve his main objective. When he concocted a story regarding the rape of a young girl and his need to look around the house for the purpose of determining whether the young girl's description of their house was accurate, Appellant and his roommate ultimately agreed to allow a search for this specific purpose. Because Appellant's consent to this limited type of search was voluntary, the trial

---

1. Chief Judge Combs dissented from this    opinion.

court reasoned that any plain view seizures of collateral criminality made during the search was a necessary product of this initial voluntary consent.

The premise of the trial court's ruling, of course, is the plain view doctrine. Under the plain view doctrine, a warrantless seizure of illegal substances or objects is constitutionally valid so long as the officer has not violated the Fourth Amendment "in arriving at the place where the evidence could be plainly viewed." *Hazel v. Commonwealth,* 833 S.W.2d 831, 833 (Ky.1992). In order to validate a "plain view" seizure, the *Hazel* Court explained that "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must have a lawful right of access to the object itself." *Id.* (emphasis added).

Pursuant to these standards, the trial court's ruling falters in the fact that Trooper Manar was only able to reach a location from which he could spy illegal drugs and related paraphernalia through machination. We addressed the use of ruses by police in *Adcock v. Commonwealth,* 967 S.W.2d 6 (Ky.1998). In *Adcock,* an officer disguised himself as a pizza delivery person in order to coax a resident into opening the door for the purpose of executing a valid search warrant. *Id.* at 7. We held that "[t]he guiding factor in determining whether a ruse entry, to execute a search warrant, constitutes a 'breaking' under the Fourth Amendment should be whether the tactic frustrates the purposes of the 'knock and announce' rule." *Id.* at 10.[2]

The ruse in this instance was employed for the purpose of gaining consent (1) to make a warrantless entry into a home; and (2) to conduct a plain view warrantless search of the residence. Thus, the under-

lying purpose and policies in this case differ from the purpose and policies in the *Adcock* case. The guiding factor here is to determine whether this particular ruse frustrated the purpose of the constitutional requirement that consent to make a warrantless entry into and search of a home must be voluntary, and thus, free of implied or express coercion.

In *Schneckloth, supra,* the U.S. Supreme Court explained the purpose of the voluntariness requirement as follows:

"[V]oluntariness" has reflected an accommodation of the complex values implicated in police questioning of a suspect. At one end of the spectrum is the acknowledged need for police questioning as a tool for the effective enforcement of criminal laws. Without such investigation, those who were innocent might be falsely accused, those who were guilty might wholly escape prosecution, and many crimes would go unsolved. In short, the security of all would be diminished. At the other end of the spectrum is the set of values reflecting society's deeply felt belief that the criminal law cannot be used as an instrument of unfairness, and that the possibility of unfair and even brutal police tactics poses a real and serious threat to civilized notions of justice.

*Id.* at 225, 93 S.Ct. at 2046 (internal citations omitted). The *Schneckloth* Court further emphasized that "[i]t is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals." *Id.* at 243, 93 S.Ct. at 2056 (internal quotation omitted).

In determining whether this particular ruse frustrated the purposes set forth above, we must make "a careful scrutiny of

2. Ultimately, we found that the tactic did not     undermine the basic purpose of the rule. *Id.*

all the surrounding circumstances in a specific case." *Cook, supra* at 331. The *Schneckloth* Court advised that "account must be taken of subtly coercive police questions, as well as the possible vulnerable subjective state of the person who consents." *Id.* at 229, 93 S.Ct. at 2049. The Court further explained that no decision should turn "on the presence or absence of a single controlling criterion." *Id.* at 226, 93 S.Ct. at 2047.

▮ In this case, Trooper Manar confronted Appellant and his roommate at an alarming hour (4:00 a.m.) with unnerving news—a young girl had just been raped and he needed to look around the house in order to determine if it was the place that she had described to police. Stunned and sure that they were not the perpetrators of this heinous crime (since in fact, it never occurred), Appellant and his roommate made a split second decision to allow Trooper Manar into the residence in order to assist the trooper in his investigation. The trooper testified, and the trial court found that Appellant and his roommate would have never consented to the search if they knew the trooper's true purpose. Furthermore, Trooper Manar had no legal right, independent of receiving some kind of valid consent, to enter or search the home. Under these unique circumstances, we believe that the ruse utilized by Trooper Manar absolutely undermined the purposes inherent in requiring consent to be voluntarily obtained without any implied or express coercion.

Our belief that Appellant's consent to search was coerced is based on several factors. First, given the time and nature of the trooper's ruse, we believe that Appellant and his roommate were in a particularly vulnerable state. A knock on the door at 4:00 a.m. by uniformed police officers is a *frightening* event in and of itself. Couple this knock with a heinous and shameful accusation, such as the rape of a young girl, and nearly any person would feel overwhelmed and stunned.

Second, Trooper Manar's tactics were unnecessary in this instance and not based on any pressing or imminent tactical considerations. In contrast, the ruse utilized by the police in *Adcock* was primarily employed for safety reasons and to avoid the destruction of evidence that commonly takes place when entry into a home for the purposes of executing a search warrant is delayed or hindered.

Finally, we believe that if the type of ruse utilized by Trooper Manar was sanctioned by this Court, citizens would be discouraged from "aiding to the utmost of their ability in the apprehension of criminals" since they would have no way of knowing whether their assistance was being called upon for the public good or for the purpose of incriminating them. *Schneckloth, supra,* at 243, 93 S.Ct. at 2056 (internal quotation omitted). Moreover, widespread use of this type of tactic could quickly undermine "the set of values reflecting society's deeply felt belief that the criminal law cannot be used as an instrument of unfairness." *Id.* at 225, 93 S.Ct. at 2046.

We are careful to note that our holding is limited and narrow. We do not hold that the use of ruses, in general, is unconstitutional. The United States Supreme Court has long held that "[a]rtifice and stratagem may be employed to catch those engaged in criminal enterprises." *Sorrells v. United States,* 287 U.S. 435, 441–42, 53 S.Ct. 210, 212, 77 L.Ed. 413, 416–17 (1932). Indeed, in *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) and *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), the Supreme Court held that the Fourth Amendment is not violated when police obtain incriminating information through

the use of undercover agents who misrepresent their identity for the purpose of enticing defendants to confide or disclose wrongdoing. The use of undercover agents and stratagems in police investigations has long been sanctioned, and we do not question such a practice in this opinion. *See, e.g., United States v. Baldwin,* 621 F.2d 251, 252–253 (6th Cir.1980) ("[A]n [undercover] agent may legitimately gain entrance into a house by misrepresenting his identity."); *Adcock, supra* at 10 (entry into home for purposes of executing a search warrant by agent posing as pizza delivery person was constitutional); *People v. LaGuerre,* 29 A.D.3d 820, 815 N.Y.S.2d 211, 214 (N.Y.App.Div.2006) (no due process violation when defendant voluntarily discarded chewing gum from which DNA sample was taken in the course of a police contrived "Pepsi Taste Test"); *State v. Nedergard,* 51 Wash.App. 304, 753 P.2d 526 (1988) (entry into home by undercover agents posing as interested buyers responding to "For Sale" sign was permissible means of establishing probable cause for a search warrant).

What distinguishes this case most, perhaps, from the bulk of other ruse cases is the fact that Trooper Manar exploited a citizen's civic desire to assist police in their official duties for the express purpose of incriminating that citizen. The use of this particular ruse simply crossed the line of civilized notions of justice and cannot be sanctioned without vitiating the long established trust and accord our society has placed with law enforcement. *See United States v. Bosse,* 898 F.2d 113 (9th Cir.1990) ("A ruse entry when the suspect is informed that the person seeking entry is a government agent but is misinformed as to the purpose for which the agent seeks entry cannot be justified by consent."); *United States v. Turpin,* 707 F.2d 332, 334 (8th Cir.1983) ("Misrepresentations about the nature of an investigation may be evi-

dence of coercion."); *SEC v. ESM Government Securities, Inc.,* 645 F.2d 310, 316 (5th Cir.1981) ("We think it clearly improper for a government agent to gain access to records which would otherwise be unavailable to him by invoking the private individual's trust in his government, only to betray that trust."); *People v. Daugherty,* 161 Ill.App.3d 394, 112 Ill.Dec. 762, 514 N.E.2d 228, 233 (1987) ("Where, as here, the law enforcement officer without a warrant uses his official position of authority and falsely claims that he has legitimate police business to conduct in order to gain consent to enter the premises when, in fact, his real reason is to search inside for evidence of a crime, we find that this deception under the circumstances is so unfair as to be coercive and renders the consent invalid."); *State v. Schweich,* 414 N.W.2d 227, 230 (Minn.App. 1987) ("Tacit misrepresentation of the purpose of a search can rise to such a level of deception to invalidate the consent."); *State v. McCrorey,* 70 Wash.App. 103, 851 P.2d 1234, 1240 (1993) (distinguishing between undercover police activity and police acting in their official capacity actively misstating their purpose for gaining consent), *abrogated on other grounds by State v. Head,* 136 Wash.2d 619, 964 P.2d 1187 (1998); *Commonwealth v. Haynes,* 395 Pa.Super. 322, 577 A.2d 564, 572 (1990) (defendant's consent to be transported to the stationhouse was invalid because police deceived the defendant as to the true purpose of the trip); *United States v. Giraldo,* 743 F.Supp. 152, 154 (E.D.N.Y.1990) (defendant's consent was invalid where officer gained entry to home by claiming to be checking for a possible gas leak). Accordingly, we find that the deception employed by Trooper Manar in this case was so unfair and unconscionable as to be coercive and thus, Appellant's consent to a search

of his residence was constitutionally invalid.

Because the record lacks sufficient evidence to support a finding of voluntary consent, the decision of the Court of Appeals is reversed, and Appellant's sentence and convictions are vacated. This matter is remanded to allow Appellant to withdraw his guilty pleas pursuant to RCr 8.09 and for further proceedings consistent with this opinion.

LAMBERT, C.J., GRAVES, MCANULTY, MINTON, and SCOTT, J.J., concur.

WINTERSHEIMER, J., dissents in a separate opinion in which ROACH, J., joins.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because it misinterprets the clear statement of the circuit judge which found that the police were given consent to search. The order denying the motion to suppress evidence entered on July 25, 2003 clearly states that the defendants gave consent for the police to search for evidence of an assault.

The fact that the police intent was to search for drugs did not render the consent constitutionally invalid. The police ruse did not coerce them into consenting to a search. The defendants could have refused consent for a search of whatever nature but chose not to.

Clearly this Court has chosen to substitute its version of the facts for that of the original trier of the facts. I believe such a substitution is impermissible.

The entry by the trooper and the subsequent search of the residence was proper because of the voluntary consent and the use of a ruse or deception was justified under all the circumstances.

The question of voluntary consent turns on the careful scrutiny of all the surrounding circumstances of any particular case. *Cook v. Commonwealth,* 826 S.W.2d 329 (Ky.1992). In *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the United States Supreme Court held that the validity of a purported consent to search was to be determined by a voluntariness test similar to that which has been used by the court in coerced confession cases. It is a question of fact to be determined from all of the circumstances. *See also* 3 LaFave, Wayne R., *Search and Seizure: A Treatise on the Fourth Amendment* § 8.2 (3d Version, 1996).

Although deception by employment of a ruse is not condoned by the courts, the limited use of such a device is supported by many cases not only in Kentucky, but also through the nation. *Adcock v. Commonwealth,* 967 S.W.2d 6 (Ky.1998) held that a ruse used by police to gain entry for the purpose of executing a search warrant, so long as it is accomplished without the use of force, promotes the underlying purpose of the Knock and Announce Rule, and is thus constitutional and reasonable under the Fourth Amendment.

The majority opinion seeks refuge in the *Schneckloth* reference to "possible vulnerable subjective state of the person who consents." Such vulnerability is clearly misplaced. Krause, then 29–years–of–age, was a person of above average intelligence who was a director at a local television station. He is a college graduate. He surely knew he had the right to allow the officer to search without a warrant. The entire incident was triggered by a tip from a subject arrested by the trooper earlier which directed the officer's attention to the home on 19th Street.

Persuasive authority can be found in *Commonwealth v. Morrison,* 275 Pa.Super. 454, 418 A.2d 1378 (1980), in which the consent to search was voluntary even though procured by police who misrepresented both identity and purpose. *State v. Hastings,* 119 Wash.2d 229, 830 P.2d 658 (1992), allowed warrantless entry made after consent was given as valid despite the use of a ruse; *State v. Nedergard,* 51 Wash.App. 304, 753 P.2d 526 (1988), held that an undercover officer's use of a ruse to enter the residence of a suspect by posing as an interested buyer responding to a for sale sign was permissible as a means of establishing probable cause for a search warrant. *People v. Manieri,* 83 Misc.2d 798, 373 N.Y.S.2d 504 (1975), stated that consent of a hospital patient in a private room for entry was not vitiated as to police acting in an undercover capacity as a porter. Other cases following the same general line of the use of deception as *Reese* are: *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966); *United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), and *United States v. Baldwin,* 621 F.2d 251 (6th Cir.1980); *Commonwealth v. Ginter,* 289 Pa.Super. 9, 432 A.2d 1024 (1981). As noted earlier, the voluntariness test for analyzing consent was adopted from the cases involving coerced confessions. The mere use of a ruse or a strategic deception does not render a confession involuntary so long as the deception does not rise to the level of coercion. *See Springer v. Commonwealth,* 998 S.W.2d 439 (Ky.1999) citing *Illinois v. Perkins,* 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990).

When the police deception as to the purpose of the search is used in obtaining the consent to search, each case must be analyzed with regard to the surrounding circumstances. *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976).

Several jurisdictions have specifically approved the use of deception by police to gain consent to search. In *State v. Johnson,* 253 Kan. 356, 856 P.2d 134 (1993), the police used deception to obtain consent to search the home of the defendant. The officers misrepresented to the defendant that they were looking for a parole violator when they were actually seeking evidence regarding the murder of the victim. In *People v. Zamora,* 940 P.2d 939 (Colo.App. 1996), the officers used a ruse stating that they just wanted a quick look at the apartment of the defendant in regard to a domestic dispute in an adjacent apartment. The officers were actually trying to investigate whether the apartment matched the sexual assault victim's description of the apartment to which she had been taken. The Colorado court determined that consent to search may be voluntary even when the person giving consent is not aware of or is misinformed as to the purpose of the search. The consent by the defendant was a product of his own free will and intelligently made and the defendant knew he had a right to refuse entry. The Court concluded that the deception alone does not invalidate consent but is one factor to be considered in the totality of circumstances.

In *People v. Avalos,* 47 Cal.App.4th 1569, 55 Cal.Rptr.2d 450 (1996), police stopped the defendant and told him that he had been stopped as part of a burglary investigation. The officer stated that he wanted to search the truck of the defendant for stolen property in addition to some other contraband. Actually the investigation was in regard to narcotics. The Court determined that police properly identified themselves and permitted the search based on the total circumstances

and concluded that the consent was voluntary.

Here, the officer told Yamada and Krause that he was looking for evidence of an assault. In attempting to gain entry to search, the officer stated that he wanted to look under the bed, bedspread and furniture around the house to see if it was consistent with the description given by the alleged assault victim. Yamada should have clearly realized that he had incriminating evidence in his room because he wanted to go back to the room and clean it up before the search. When the officer, with the consent of Yamada, accompanied him to his room, Yamada quickly tried to hide the incriminating evidence behind his back. One of the items was a spoon and Yamada told the officer that the substance on the spoon was cocaine. Upon additional questioning, Yamada handed over a bag of cocaine from his robe and stated that was all the drugs in the home.

The officer also asked if he could search Krause's room, and the trial judge found that the evidence indicated that Krause consented to the search of his room. This was a separate and distinct consent which was found to be voluntary. Under any circumstances, the subsequent search and seizure of the contraband from the room occupied by Krause was valid.

The circumstances of this matter indicated that the officer had a tip that a person unknown to him had purchased cocaine from Yamada at the residence several hours before the search. The officer identified himself as a police officer, was in uniform and never tried to conceal his identity. His conduct was never threatening or coercive. He never feigned an emergency or exceeded the scope of the consent.

Krause testified at the suppression hearing that he answered the door and he knew that the officer needed a warrant and that he could say no when they asked to come into the house. The evidence indicates that neither resident was uncooperative in giving any consent. The trial judge found that the evidence indicated that Krause consented to the search of his room.

The surrounding circumstances were essentially that the officer had a tip that a person unknown to him had purchased cocaine from Yamada at the residence several hours before the search. The officer was in full uniform and identified himself as a police officer. His behavior was not threatening or coercive.

Krause had prior contact with law enforcement because he had been convicted of possession of marijuana and drug paraphernalia. He was in his late–20s with a college education and worked as a television producer at a local station. Clearly, he was above average intelligence and had experience in the area. Krause also stated that he was not doing drugs that evening. Several of the cases cited in support of the majority opinion's position are based on mere conjecture or speculation. Here, the officer had probable cause to believe that the person he was attempting to arrest was in the apartment and he could legitimately enter the premises by means of a deception. Cf. *United States v. Phillips,* 497 F.2d 1131 (9th Cir.1974).

*Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), held that a search cannot be justified when the consent has been given only after the official conducting the search has asserted that he possessed a warrant. Justice Stewart held that when a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. Where there is coercion, there cannot be consent. That is not the situa-

tion presented in this case. This case involved rape and two charges of felonious assault and whether a rifle was introduced into evidence as a result of improper search. The *Bumper* ruse was indeed a coercive technique. That individual believing that the officer had a warrant, believed that he did not have the ability to refuse. Krause was not in that position. He or his drug dealer roommate could easily have told the officer to leave. It is almost beyond belief that any drug dealer with illegal drugs in an apartment would not resist to the utmost anything other than a search warrant before letting law enforcement in the premises.

Under all the circumstances, I believe that consent was given and that this judgment of conviction should be affirmed in all respects.

ROACH, J., joins this dissent.