RENDERED: JUNE 20, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0166-DG

BOBBY RAY OSBORNE                                              APPELLANT

V.

ON REVIEW FROM COURT OF APPEALS
NO. 2022-CA-1382
ESTILL CIRCUIT COURT NO. 21-CR-00006

COMMONWEALTH OF KENTUCKY                                      APPELLEE

**OPINION OF THE COURT BY JUSTICE NICKELL**

**<u>AFFIRMING</u>**

Bobby Ray Osborne entered a conditional guilty plea to first-degree trafficking in a controlled substance and possession of drug paraphernalia. He received a total sentence of five years' imprisonment. The Court of Appeals affirmed.[1] We granted discretionary review to clarify the distinction between a consensual encounter and an investigative detention in the Fourth Amendment context. Following careful review of the law, briefs, and record, we affirm.

---

[1] In the same opinion, the Court of Appeals heard two separate appeals arising from Osborne's four convictions upon two separate indictments. *Osborne v. Commonwealth*, No. 2022-CA-1382-MR, 2024 WL 501146 (Ky. App. Feb. 9, 2024). In No. 2022-CA-1383-MR, the Court of Appeals affirmed Osborne's convictions for trafficking in a controlled substance and possession of drug paraphernalia which arose from Estill Circuit Court No. 21-CR-00008. We denied discretionary review of the Court of Appeals' decision in No. 2022-CA-1383-MR and limit this opinion to matters arising from No. 2022-CA-1382-MR.

## FACTS AND PROCEDURAL HISTORY

The Clark County Sheriff's Department received a tip that a stolen trailer was located on Osborne's property in Estill County, Kentucky, and relayed that information to the Kentucky State Police and Estill County Sheriff's Department. On October 21, 2020, Kentucky State Trooper Ty Robinson, accompanied by Estill County Sheriff Chris Flynn and Deputy Brad Smith, went to investigate. When the officers arrived at the property, they saw the 81-year-old Osborne walking from the driveway toward the front door of his residence. They approached Osborne and informed him about the situation. Osborne agreed to allow the officers to inspect his trailers and search his property.

Trooper Robinson noticed Osborne kept placing his hands in the front pockets of his pants which contained two large bulges. From previous encounters, Trooper Robinson knew Osborne often carried a small handgun in his front pocket. On two of those prior meetings, which occurred outside of Osborne's house, Trooper Robinson asked him to remove the weapon and place it inside the residence before they talked.

On this occasion, Trooper Robinson asked Osborne what was in his pockets. Osborne responded he did not have a gun on him. Osborne's response did not alleviate Trooper Robinson's concerns and he asked if Osborne would empty his pockets. Osborne said "yes" and removed a large wad of cash from his left pocket. Trooper Robinson asked Osborne if he would remove the object from his right pocket. Osborne agreed and removed a baggie

2

which Trooper Robinson could see contained a brown substance. As Osborne attempted to hide the baggie behind his back, Trooper Robinson physically restrained him and asked Deputy Smith to retrieve the baggie from Osborne's hand. Based on their training and experience, the officers believed the baggie contained heroin.

The suspected heroin weighed 1.01 ounces and the cash from Osborne's pocket totaled $1,500.00. The officers did not locate the stolen trailer on the property. Deputy Smith proceeded to apply for a search warrant, which was granted and executed by the officers on the same day. The search of Osborne's residence yielded $73.00 in cash and a digital scale. Osborne was arrested and subsequently indicted on charges of first-degree trafficking in a controlled substance and possession of drug paraphernalia.

Osborne moved to suppress the heroin and cash which the officers obtained from his person without a warrant. The trial court conducted a hearing at which Trooper Robinson was the sole testifying witness. However, Osborne produced several exhibits in support of his motion including photographs of his property, Deputy Smith's affidavit for the search warrant, and Trooper Robinson's report from the investigative file. On October 25, 2021, the trial court entered an order denying Osborne's motion to suppress. The trial court determined Osborne voluntarily consented to remove the objects from his pockets and that the suspected contraband was thus placed into plain view.

Osborne filed two separate motions to reconsider which both requested various additional findings of fact. The trial court denied both motions in an order entered on December 21, 2021. Osborne subsequently entered a conditional guilty plea, reserving his right to appeal the denial of his motion to suppress. He was sentenced to a total five years' imprisonment. Additionally, Osborne agreed to forfeit any seized cash while the Commonwealth agreed not to oppose bond on appeal or otherwise oppose shock probation after Osborne served six months of his sentence. The Court of Appeals affirmed. We granted discretionary review.

## LAW AND ANALYSIS

Osborne first argues the lower courts erred by concluding he voluntarily consented to remove the items from his pockets. We disagree.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A warrantless search is per se unreasonable under the Fourth Amendment "unless an established exception applies." *Payne v. Commonwealth*, 681 S.W.3d 1, 3 (Ky. 2023). "Consent is a valid exception to the warrant requirement under the Fourth Amendment." *Id.* at 3-4 (citing *Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky. App. 2002)). Whether a suspect voluntarily consented to a search is a question of fact, which the Commonwealth bears the burden of proving "by a preponderance of the evidence from the totality of all the circumstances." *Id.* at 4 (quoting *Neal*, 84 S.W.3d at 925); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).

4

In reviewing a trial court's decision on a motion to suppress, we apply a familiar two-part standard. *Payne*, 681 S.W.3d at 4. First, we must accept the trial court's findings of fact as conclusive if they are supported by substantial evidence. *Id.* Second, we review de novo the trial court's application of the law to the particular facts of the case. *Id.* Moreover, we may affirm the ruling of a lower court for any reason supported by the record. *Jarvis v. Commonwealth*, 960 S.W.2d 466, 469 (Ky. 1998).

Osborne maintains the trial court's finding of consent was clearly erroneous because of several inconsistencies in Trooper Robinson's testimony at the suppression hearing and the description Deputy Smith provided in a subsequent affidavit for a search warrant. Specifically, he notes Trooper Robinson variously stated: (1) he told Osborne to empty his pockets; (2) he asked Osborne what was in his pockets; (3) he asked Osborne to reveal his hands; and (4) he told Osborne to quit putting his hands in his pockets. Osborne further contrasts Trooper Robinson's testimony with Deputy Smith's affidavit for the search warrant which stated in pertinent part:

> Trooper Robinson of the Kentucky State Police approached Mr. Osborne to speak with him and it was observed that Mr. Osborne was manipulating something in his pants pocket. The Affiant and Trooper Robinson were aware that Mr. Osborne had previously carried firearms on his person. Trooper Robinson requested Mr. Osborne to reveal his hands. Mr. Osborne removed his hands and they were observed to contain large amounts of cash. Affiant observed a bulge in the right front pocket and Trooper Robinson questioned Osborne.
>
> . . .
>
> Affiant observed Mr. Osborne place his hands back into his pockets and remove them in an attempt to show nothing was in

5

them. Trooper Robinson indicated that he observed a baggie concealed in Mr. Robinson's hand, restrained Mr. Osborne's hands, and instructed the Affiant to retrieve the baggie.

"The test of substantiality of evidence is whether when taken alone or in the light of all the evidence it has sufficient probative value to induce conviction in the mind[]" of a reasonable person. *Ky. State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972). When confronted with inconsistent testimony or other conflicting evidence at a suppression hearing, the trial court, as factfinder, is entitled to weigh the evidence and judge the credibility of the witnesses. *Hampton v. Commonwealth*, 231 S.W.3d 740, 749 (Ky. 2007). This rule applies whether the inconsistencies arise from the testimony of a single witness or within the context of the overall proof. *See Nix v. Commonwealth*, 299 S.W.2d 609, 610-11 (Ky. 1957). Moreover, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent [a] . . . finding from being supported by substantial evidence." *Fuller*, 481 S.W.2d at 307 (internal quotation omitted).

Relative to consent, the trial court specifically found, "[h]aving known of Osborne's [sic] carrying a handgun in his front pockets in the past, which he had previously required Osborne to remove, Robinson asked Osborne to empty his pockets, which he did." The trial court further stated Osborne "consented to remove the items from his pocket and that consent was freely and voluntarily given."

At the suppression hearing, the Commonwealth questioned Trooper Robinson as follows:

**Com.**: Did you order him to remove the objects from his pocket or had you asked him to remove them?

**Robinson**: I asked him if he would remove the items from his pocket.

**Com.**: And what was his response when you asked him to remove the items?

**Robinson**: He said yes because he didn't have any weapons on him, but he said yes.

We perceive the trial court to have properly exercised its factfinding discretion in accepting this testimony despite the existence of contrary evidence in the record.[2] As a reviewing court, we cannot simply substitute our view of the evidence for that of the factfinder. *Payne*, 681 S.W.3d at 4.

Additionally, we may briefly dispose of Osborne's claim that the trial court's findings were clearly erroneous based upon its oral remark that Trooper Robinson's testimony was consistent. During Osborne's cross-examination of Trooper Robinson, the following exchange occurred:

**Osborne**: Okay. . . You and Mr. Smith have different versions of what happened.

**Tpr. Robinson**: No.

**Osborne**: Okay. What was your version of how he was asked to pull his hands out?

**Trial Court**: Well, [defense counsel], we've heard his version multiple times.

**Osborne**: Okay, well, he's given multiple answers, and he and Mr. . . . Smith give different . . .

---

[2] In its brief, the Commonwealth acknowledges Trooper Robinson's testimony was inconsistent but contends any such inconsistencies are immaterial.

**Trial Court**:  Well, I've heard him.  He was consistent each time.

**Osborne**:  He what?

**Trial Court**:  He was consistent each time.

**Osborne**:  Okay, do you [Trooper Robinson], do you agree that Mr. Smith says he requested that you pull them out, and you said that Mr. Smith, you didn't ask him to pull them out?

**Tpr. Robinson**:  When I got on the scene, and Mr. Osborne kept putting his hands in his pockets, I asked him to reveal, I told him to stop putting his hands in his pockets.  That's what I did.

**Osborne**:  Okay.

We perceive no indication the trial court intended these oral remarks to constitute an official finding of fact.  Further, the trial court did not reduce its statements to writing in the order denying the motion to suppress.  We have long held a court's written orders must prevail over any inconsistent oral statements.  *Commonwealth v. Taber*, 941 S.W.2d 463, 464 (Ky. 1997), *overruled on other grounds by Keeling v. Commonwealth*, 381 S.W.3d 248 (Ky. 2012).  Thus, we deem the written finding of consent to be conclusive and proceed to examine the trial court's application of the law to the facts.

In this regard, Osborne contends any purported consent was involuntary and otherwise tainted by police coercion.  He points specifically to the physical restraint imposed by Trooper Robinson after he had emptied his pockets.  We disagree.

The United States Supreme Court has identified three broad categories of interaction between citizens and police:  (1) the consensual encounter whereby police may approach a citizen in a public place for any reason without any

8

objective level of suspicion, *United States v. Mendenhall*, 446 U.S. 544 (1980); (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity, *Florida v. Royer*, 460 U.S. 491 (1983); and (3) the arrest, which is only valid when supported by probable cause, *Illinois v. Gates*, 462 U.S. 213 (1983). *See also Baltimore v. Commonwealth*, 119 S.W.3d 532, 537 (Ky. App. 2003). Investigative detentions and arrests constitute seizures which trigger the application of Fourth Amendment protections. *Baltimore*, 119 S.W.3d at 537. A consensual encounter, however, is not a seizure to which the Fourth Amendment applies, provided the officer's actions do not convert it into an investigative detention. *Florida v. Bostick*, 501 U.S. 429, 433 (1991).

Indeed, it is well-established that law enforcement officers "may pose questions, ask for identification, and request consent to search" personal items without any degree of objective justification, provided they are where they have a right to be and "do not induce cooperation by coercive means." *United States v. Drayton*, 536 U.S. 194, 201 (2002). Thus, while safety concerns may inform an officer's request for consent to search, a consent request does not depend on a credible threat to safety. The line of demarcation between a consensual encounter and an investigative detention is a police officer's use of physical force, show of authority, or other application of explicit or implicit means of coercion "which . . . would compel a reasonable person to believe he was not

free to leave."[3]  *Baker v. Commonwealth*, 5 S.W.3d 142, 145 (Ky. 1999).  The standard governing this determination is objective and does not depend on the suspect's subjective beliefs regarding the nature of the encounter.  *Mendenhall,* 446 U.S. at 554.  Similarly, a police officer's subjective intent "is irrelevant except insofar as that may have been" communicated to the suspect.  *Id.* at 555 n.6.

In *Mendenhall,* the Supreme Court identified several factors to determine whether the seizure of a person has occurred, such that a consent to search may be deemed involuntary:  "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."  *Id.* at 555.  Applying these factors, we have consistently distinguished between a police officer's mere request, which a suspect may freely accept or refuse, and a direct order, which "must be interpreted as a show of authority" sufficient to overcome the will of the suspect.  *Baker,* 5 S.W.3d at 145; *Payne,* 681 S.W.3d at 4.

Here, Osborne has failed to demonstrative sufficient objective indicia of coercion to refute the trial court's findings relative to Trooper Robinson's request for him to empty his pockets.  Trooper Robinson and the other officers were entitled to approach Osborne outside the front of his residence, the same

---

[3] Thus, we disavow the Court of Appeals' statement that a police officer may *order* a suspect to empty his or her pockets as a safety precaution without implicating the Fourth Amendment.

10

as any other member of the general public. *Quintana v. Commonwealth*, 276 S.W.3d 753, 758 (Ky. 2008). We reject Osborne's contention that *Quintana* is inapplicable because "the officers were not there for a knock and talk but to search allegedly for a trailer and had just asked . . . for consent which he had already given outside his house."

In *Quintana*, we described "[t]he knock and talk procedure" as 'involv[ing] law enforcement officers approaching a home for the purpose of obtaining information about a crime that has been committed, a pending investigation, or matters of public welfare." *Id.* at 756. Reviewing pertinent federal authority, we held "certain areas such as driveways, walkways, or the front door and windows of a home frequently do not carry a reasonable expectation of privacy because they are open to plain view and are properly approachable by any member of the public," including police officers, "unless obvious steps are taken to bar the public from the door." *Id.* at 758. There is no indication in the present record that Trooper Robinson and the other officers invaded any portion of Osborne's property that was not impliedly open to public approach. Additionally, we cannot accept and need not further belabor Osborne's argument that the use of the consensual knock and talk procedure literally requires the police to knock on the suspect's front door. *Id.*

Likewise, the fact that Osborne already consented to a search for the stolen trailer does not necessarily create an inherently coercive situation or otherwise preclude law enforcement from requesting consent to enlarge the scope of an ongoing search or conduct an additional search of a person or

11

property. Absent objective evidence of duress or coercion, this Court has directly held a person in custody may voluntarily consent to a search. *Talbott v. Commonwealth*, 968 S.W.2d 76, 82 (Ky. 1998). Certainly, the logic of *Talbott* applies with equal force to the present appeal.

Moreover, Osborne's reliance on *Krause v. Commonwealth*, 206 S.W.3d 922 (Ky. 2006), is misplaced. In *Krause*, we held police cannot utilize a ruse to manufacture a suspect's consent by "exploit[ing] a citizen's civic desire to assist police in their official duties for the express purpose of incriminating that citizen." *Id.* at 927.

We hasten to observe that *Krause* is a far cry from the present appeal. The officer in Krause was conducting a drug investigation and, by his own admission, knew the suspects would not ordinarily consent to a search of their residence. *Id.* at 926. At the unusual hour of 4:00 a.m., the officer arrived at the suspects' residence and falsely informed them "a young girl had just been raped and he needed to look around the house in order to determine if it was the place that she had described to police." *Id.* Upon entering the residence under this pretext, the officer found illegal drugs in plain view. *Id.* at 924. Here, beyond Osborne's own conclusory allegations and speculation as to what Trooper Robinson could have done differently, there is simply no evidence Trooper Robinson procured Osborne's consent through illegal trickery or malicious falsehood of the extreme and fundamentally unfair nature contemplated by *Krause*. *Id.* at 926 ("We are careful to note that our holding is limited and narrow.").

12

Returning to the *Mendenhall* analysis, we recognize two other officers accompanied Trooper Robinson to Osborne's property. However, we discern no indication their collective presence was threatening or intimidating to the extent of overbearing Osborne's will. Specifically, the officers did not draw their weapons, raise their voices, or touch Osborne's person *at the time* of Trooper Robinson's request for consent.

Moreover, we cannot accept Osborne's contention that the situation was inherently coercive because of his advanced age and the fact Trooper Robinson had previously arrested him without a warrant at his home. While Osborne's age and history with Trooper Robinson are relevant considerations, they are not outcome-determinative. *Mendenhall,* 446 U.S. at 558. Further, we will not speculate on these matters and decline Osborne's invitation to divine Trooper Robinson's subjective and unexpressed motivations. *Id.* at 555 n.6. Considering the totality of the circumstances, we are firmly convinced the evidence of record supports the trial court's conclusion that Osborne's consent was voluntary. *Id.* at 558.

Next, Osborne argues the lower courts erred by determining the contraband was found in plain view because the incriminating nature of the item was not immediately apparent until after he removed it from his pocket. He further contends the fact Trooper Robinson initially believed the bulge in his pocket was a gun conclusively established the item was not in plain view. We disagree.

13

"The plain-view exception to the warrant requirement applies when the object seized is plainly visible, the officer is lawfully in a position to view the object, and the incriminating nature of the object is immediately apparent." *Kerr v. Commonwealth*, 400 S.W.3d 250, 266 (Ky. 2013) (citing *Horton v. California*, 496 U.S. 128, 136–37 (1990)). This doctrine is founded "on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost; the owner may retain the incidents of title and possession but not privacy." *Commonwealth v. Bembury*, 677 S.W.3d 385, 407 (Ky. 2023) (Nickell, J., concurring) (quoting *Illinois v. Andreas*, 463 U.S. 765, 771 (1983)).

Osborne misapprehends the timing and application of the plain view doctrine in this instance. As discussed above, Trooper Robinson's request for Osborne's consent to empty his pockets did not depend on the incriminating nature of the items, safety concerns, or otherwise require any reasonable, articulable suspicion of criminal activity. *See Drayton*, 536 U.S. at 201; *Quintana*, 276 S.W.3d at 758. In other words, because he was in a location where he had the right to be, Trooper Robinson was entitled to ask for Osborne's consent. The law did not require Trooper Robinson to frisk Osborne for weapons. Consequently, the plain view doctrine became operative once Osborne pulled the baggie containing a brown substance from his pocket such that Trooper Robinson could directly perceive its clearly incriminating nature. At this point, we are satisfied the officers had probable cause to seize the suspected contraband without a warrant. *Posey v. Commonwealth*, 185 S.W.3d

14

170, 173 (Ky. 2006). "Moreover, since the contraband was in plain view, it was also reasonable for [the officers] to believe that the drugs were in imminent danger of being destroyed in the absence of immediate action to secure the evidence." *Id.* Therefore, we conclude the trial court properly determined the contraband was in plain view and lawfully subject to seizure once Osborne voluntarily removed the baggie from his pocket.

For his third and final contention of error, Osborne argues the trial court erred by denying his motion for additional findings of fact pertaining to the voluntariness of his consent, the applicability of the plain view doctrine, the officers' reasonable and articulable suspicion for initiating an investigatory detention under *Terry v. Ohio*, 392 U.S. 1 (1968), and the reasonableness of the intrusion during his detention.[4] We disagree.

RCr[5] 8.20(2) requires a trial court, "[w]hen factual issues are involved in deciding a motion[]" to "state its essential findings on the record." Considering the critical importance of written factual findings to meaningful appellate review, "it is essential that the trial court discharge its responsibility to make express findings that sufficiently resolve the legal issues presented by a motion to suppress." *Commonwealth v. Jones*, 217 S.W.3d 190, 194 (Ky. 2006). While

---

[4] This Court has long recognized "the seminal *Terry v. Ohio* decision," where "the United States Supreme Court held 'when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' the officer may conduct a pat-down search, or a 'frisk,' of the individual in order to 'determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.'" *Frazier v. Commonwealth*, 406 S.W.3d 448, 454 (Ky. 2013) (quoting 392 U.S. at 24).

[5] Kentucky Rules of Criminal Procedure.

the trial court's written findings were admittedly terse, we are convinced the order denying Osborne's motion to suppress adequately documented the relevant facts and resolved the disputed legal issues.

Moreover, the trial court was not required to make additional findings. The essential factual finding relative to the voluntariness of Osborne's consent was the trial court's stated belief that Trooper Robinson merely requested, as opposed to commanded, Osborne to empty his pockets. We concluded this finding was supported by substantial evidence and will not invade the province of the factfinder or otherwise second-guess credibility assessments and the weight of the evidence by requiring extended explanations of these matters. *See Payne*, 681 S.W.3d at 4. Similarly, the trial court's finding on the plain view doctrine logically followed from its finding on consent: after Osborne consented to empty his pockets, he placed the contraband in plain view of the officers.

We also agree with the Court of Appeals that additional findings on reasonable suspicion and the degree of invasion under *Terry* were not required. We have affirmed the trial court's holding that a consensual encounter escalated into a plain view seizure. This scenario is fundamentally incompatible with that of an investigation detention. *See Baltimore*, 119 S.W.3d at 537. Again, though perhaps Trooper Robinson may have been justified in frisking Osborne for weapons, the law did not require such a course

16

of action.[6]  Indeed, so long as an officer's conduct comports with the applicable law, it is not for courts to question or second-guess his or her decision-making in the field based on rank speculation about what the officer could have done differently.

Further, Osborne's assertion in his brief that "[t]he one thing the parties agreed on was that this was an issue of a [*Terry*] stop in a sense" is simply not accurate.  During oral argument at the suppression hearing, the prosecutor clearly stated it was not a *Terry* situation and instead claimed Trooper Robinson merely requested Osborne to voluntarily remove the items from his pocket.  Because Osborne's request for additional findings under *Terry* is essentially an argument for reconsideration of the trial court's findings and conclusions relative to the consent and plain view issues, we conclude the request was properly denied.

## CONCLUSION

For the foregoing reasons, the decision of the Court of Appeals is affirmed.

All sitting.  Lambert, C.J.; Bisig, Conley, Goodwine, and Keller, JJ., concur.  Thompson, J., dissents by separate opinion.

Thompson, DISSENTING. I write separately to express two concerns. First, the Commonwealth presented four different versions of what occurred on

---

[6] In its brief to this Court, the Commonwealth indicates it does not believe Trooper Robinson would have had reasonable suspicion to initiate an investigatory detention under *Terry* at the time consent was requested.

17

the front yard (in an affidavit, at the preliminary hearing, on the arrest warrant, and at the suppression hearing). How could the Commonwealth establish that Bobby Ray Osborne consented to removing the contents of his pockets with such inconsistent information? I would determine that the fact finding which occurred here was not supported by substantial evidence.

My second concern is that this non-consensual encounter was a clear violation of Bob Ray Osborne's right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and Section Ten of the Kentucky Constitution. The safety pat-down authorized in *Terry v. Ohio*, 392 U.S. 1 (1968), was not followed here. Facts matter and as the majority opinion clearly states, the officer who knew that Osborne would carry a gun, chose to order him to pull items out of his pockets. To be clear, such an action is in violation of *Terry*.

In *Terry,* the United States Supreme Court concluded "that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Id.* at 27. In *Terry*, the officer "patted down the outer clothing of petitioner and his two companions. *He did not place his hands in their pockets* or under the outer surface of their garments *until he had felt weapons*, and then he merely reached for and removed the guns." *Id.* at 29–30 (emphasis added).

18

Therefore, *Terry* cannot support the officer's actions in the case before us. Terry provides the roadmap for how the officer should have addressed his fear that Osborne had a weapon in his pocket. The officer should have patted Osborne down, rather than asking him to empty his pockets.

Once that occurred, if the officer then felt an object in Osborne's pocket that was immediately identifiable as contraband, he would then have probable cause to remove it. There is no justification for skipping ahead in this process and running roughshod over Osborne's clearly established constitutional rights. Accordingly, I dissent.

COUNSEL FOR APPELLANT:

Thomas P. Jones
Thomas P. Jones Law Office, PLLC


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

James Havey
Assistant Solicitor General