[No. 20156–5–I.   Division One.   May 4, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. BRUNO NEDERGARD, *Appellant.*

*Rita Griffith* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jeanette Dalton, Deputy,* for respondent.

SWANSON, J.—Bruno Nedergard appeals from his conviction for possession of marijuana with intent to deliver or manufacture. RCW 69.50.401(a). Nedergard contends that police illegally used a ruse to enter his residence to establish probable cause for a search warrant. We affirm.

On July 30, 1986, King County police officers executed a search warrant at a residence in Ravensdale. The sole occupant of the house, appellant Nedergard, was arrested. A search of the basement revealed two marijuana growing rooms. Officers seized 20 large marijuana plants and numerous items of growing equipment.

The affidavit in support of the search warrant was prepared by King County Police Office Sue Ann Peters. Peters received information from another officer about a possible marijuana growing operation in the basement of a house located at 27230 SE 271st. An anonymous informant had reported being in the basement of the house and having seen growing marijuana plants.

On the basis of this tip, Officer Peters and her partner traveled to the residence in plain clothes and an unmarked police car. A "For Sale" sign outside indicated that the

house would be shown by appointment only. Peters knocked at the front door but received no answer. As Peters began to walk away, appellant Nedergard came from the rear of the house. Peters asked him if she needed an appointment to view the house. Nedergard, who identified himself as a renter, agreed to show the visitors around.

The two officers accompanied Nedergard into the house through the back door, which led directly into the kitchen. As the three stood talking in the kitchen, Peters asked Nedergard if he minded if she looked around. Nedergard replied that he did not, and Peters walked into the adjoining rooms. Nedergard remained in the kitchen, chatting with Peters' partner.

Peters walked toward one side of the house, where a stairway led down into the basement. Peters went down the steps where she observed a room containing growing lights and plants and detected the odor of growing marijuana. Peters, who estimated that she was gone about 5 minutes, then returned to the kitchen. After leaving the house, Peters prepared the search warrant application.

Prior to trial, Nedergard moved to suppress the evidence seized pursuant to the search warrant, arguing (1) that Peters had exceeded the scope of his consent by entering the basement; and (2) that Peters' affidavit was false because she had not entered the basement at all. Peters and Nedergard both testified at the suppression hearing.

After acknowledging that he had not limited Peters' freedom to roam about the house, Nedergard withdrew the claim that Peters had exceeded the scope of the consent. Nedergard testified that while Peters was away from the kitchen, he stood in a position from which he could observe the basement door. Nedergard believed he would have been able to hear or see the basement door had Peters opened it.

After listening to the testimony, the trial court denied the suppression motion, finding that Nedergard had placed no limits on Peters' permission to look around and that

Peters' account of having entered the basement was credible. Following a trial to the court on stipulated facts, Nedergard was found guilty as charged.

On appeal, Nedergard invites this court to reconsider our decision in *State v. Hashman*, 46 Wn. App. 211, 729 P.2d 651 (1986), *review denied*, 108 Wn.2d 1021 (1987). Nedergard maintains that the rule in *Hashman* permitting a ruse entry by police into a residence is overly broad and inconsistent with state and federal constitutional principles. He argues that a ruse entry is permissible only when a defendant invites an undercover police officer into a residence expressly for the purpose of participating in illegal acts. We disagree.

In *Hashman*, we upheld the use by police of a ruse to gain entry to the defendant's house for the purpose of establishing probable cause for a search warrant. A police officer, acting in a civilian capacity, visited the defendant's house and detected what he believed to be the odor of marijuana emanating from a locked room. From outside the residence, the officer later observed "a halo of bluish light" around the window of the locked room. Based on this information, another police officer, posing as a contractor, asked the defendant for permission to look around the house. The defendant agreed and gave the officer a tour of the house, during which the officer detected the odor of growing marijuana. Partly on the basis of this evidence, the officer obtained a search warrant.

The defendant in *Hashman* moved to suppress the seized evidence, claiming that the use of a ruse to enter the house was illegal. We disagreed, holding that a ruse entry into a residence to establish probable cause does not necessarily vitiate an otherwise consensual entry if the police have "a justifiable and reasonable basis to suspect criminal activity." *Hashman*, at 216. The *Hashman* analysis extended a series of Washington decisions approving the use of ruses by police to gain entry to a residence to the specific context of establishing probable cause for a search warrant. *See State v. Myers*, 102 Wn.2d 548, 689 P.2d 38 (1984)

(upholding use of fictitious arrest warrant to gain entry to execute valid search warrant); *State v. Ellis,* 21 Wn. App. 123, 584 P.2d 428 (1978); *State v. Huckaby,* 15 Wn. App. 280, 549 P.2d 35, *review denied,* 87 Wn.2d 1006 (1976).

When police gain consensual entry to an otherwise constitutionally protected area by deceiving the defendant as to the identity and purpose of the person seeking consent, several special considerations arise. *See generally* 3 W. LaFave, *Search and Seizure* § 8.2(m) (2d ed. 1987). Generally, a warrantless search is valid when consent is granted. *Hashman,* at 214 (citing *Washington v. Chrisman,* 455 U.S. 1, 9–10, 70 L. Ed. 2d 778, 102 S. Ct. 812 (1982)). A valid consensual search requires that (1) consent be voluntary; (2) the person granting consent have authority to consent; and (3) the search be limited to the scope of the consent granted. *Hashman* (citing Utter, *Survey of Washington Search and Seizure Law,* 9 U. Puget Sound L. Rev. 1, 112 (1985)).

▮ Nedergard's criticisms of *Hashman* rest on a mischaracterization of its holding. Nedergard appears to contend that *Hashman* sanctions the use of any ruse or deceit by police to gain entrance to a residence so long as there is a reasonable suspicion that criminal activity is occurring within. Thus, Nedergard maintains, *Hashman* erroneously fails to consider whether the resulting search falls within the scope of the consent or whether the specific circumstances surrounding the ruse otherwise tend to undermine the voluntariness of the consent.

However, the *Hashman* court addressed only the contention that a ruse entry necessarily renders the defendant's consent involuntary. The defendant in *Hashman* apparently failed to challenge the voluntariness of the consent on any other basis. Consequently, the court's holding that such a ruse entry is permissible when police have reasonable suspicion that criminal activity is occurring in the residence can only be read as a threshold requirement. The *Hashman* court expressly notes that the voluntariness of a consent is

a factual determination that rests on the specific circumstances of each case. Since the defendant in *Hashman* raised no additional challenges, the court had no occasion to examine other factors that might also affect the voluntariness of a consent obtained through deceit. Also contrary to Nedergard's contention, the *Hashman* court expressly states that the validity of a consensual search depends on its adherence to the scope of the consent.

One commentator has summarized the current position of the United States Supreme Court on ruse entries as follows:

> when an individual gives consent to another to intrude into an area or activity otherwise protected by the Fourth Amendment, aware that he will thereby reveal to this other person either criminal conduct or evidence of such conduct, the consent is not vitiated merely because it would not have been given but for the nondisclosure or affirmative misrepresentation which made the consenting party unaware of the other person's identity as a police officer or police agent.

3 W. LaFave, *supra* at 223. Although not "universally acclaimed" by commentators, this proposition has found general favor with courts. *See generally* Annot., 47 A.L.R. 4th 425 (1986). The basic principle of a ruse entry is also supported by expectation of privacy analysis, which holds that what a person knowingly exposes to the public, even in one's home, is not the subject of Fourth Amendment protection. *Katz v. United States,* 389 U.S. 347, 351, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967).

Relying on *Lewis v. United States,* 385 U.S. 206, 17 L. Ed. 2d 312, 87 S. Ct. 424 (1966), Nedergard urges this court to adopt a rule restricting ruse entries to situations in which an undercover officer gains consensual entry to a residence for the express purpose of participating in criminal activity. In *Lewis,* a federal narcotics agent gained entry to the defendant's residence for the purpose of completing a drug deal. In holding that the defendant's Fourth Amendment rights were not violated by the use of the ruse, the Supreme Court stressed the fact that the agent had entered

the residence for the purpose of engaging in criminal conduct:

> [W]hen, as here, the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street. A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant.

*Lewis,* at 211.

Nedergard argues that consent based on police deception is voluntary only when the defendant believes the police agent is someone who desires to participate in illegal conduct. In effect, this narrow reading of *Lewis* attempts to distinguish misrepresentation based on identity from misrepresentation based on purpose, a distinction that has been repeatedly rejected:

> In the context of a criminal investigation, the misrepresentation of one's identity is so closely intertwined with the explicit or implicit misrepresentation of the true purpose for the entry/search, that the defendants' hair-splitting distinction between the two is an effort in futility.

*United States v. Spars,* 657 F. Supp. 730, 732 (D. Minn. 1986); *see State v. Carey,* 417 A.2d 979 (Me. 1980); *see also* 3 W. LaFave, *supra* at 226 n.264 and cases cited therein. Moreover, such a distinction would render all ruse entries unconstitutional:

> In the case of a deceitful entry, the law enforcement agent's purpose will, by definition, be different than that contemplated by the suspect. . . . To hold that the validity of the search in the case of deceitful entry depends upon whether the purpose of the agent in entering the premises was the same as the reason the suspect allowed him to enter, would make all deceitful entry searches unconstitutional. The distinction, then, between permissible and impermissible intrusions turns on what the suspect, as a result of the agent's deceit, has chosen to show to the one entering the premises.

*State v. Poland,* 132 Ariz. 269, 277–78, 645 P.2d 784, 792–93 (1982).

Consequently, the proper limitation on ruse entries focuses not on the ostensibly criminal or noncriminal purpose for which the undercover agent enters, but rather on whether the agent's actions subsequently fall within the scope of the consent:

> When an agent assumes a particular pose in order to gain entry into certain premises and then obtains information by engaging in activity not generally expected of one assuming that pose, that information is illegally obtained. . . .

*United States v. Ressler,* 536 F.2d 208, 211 (7th Cir. 1976); *see also State v. Poland, supra.* We find this approach applicable here.

Nedergard invited what he believed to be prospective home buyers into the residence. He acknowledged placing no limitations on Peters' request to "look around" the house. One who permits a prospective home buyer to "look around" unaccompanied must reasonably expect that a relatively thorough inspection of the premises may occur. Nedergard does not argue that Peters' entry into the basement would be unusual for a prospective home buyer. Consequently, Peters' conduct here fell within "the very purposes contemplated by the occupant", *Lewis v. United States, supra.*

We are not confronted here with the propriety, for example, of a ruse entry by an undercover officer pretending to be a meter reader who, instead of reading the meter in the basement, rummages through the attic. *Cf.* 3 W. LaFave, *supra* at 227–28. The type of ruse used in the instant case finds support not only in *Hashman,* but in numerous decisions from other jurisdictions. *See, e.g., United States v. Spars, supra* (FBI agents posed as potential home buyers); *State v. Poland, supra* (police agents posing as potential home buyers examined house, garage, barn, shelves, and closets).

In summary, *Hashman* does not support the wholesale and unrestricted use of ruse entries. Substantial questions remain regarding the scope of proper ruse entries and the effect of other circumstances on the validity of consent obtained through a ruse. *Cf. Guidry v. State,* 671 P.2d 1277, 1282 (Alaska 1983) (officers investigating illegal moose kill gained entry to residence by posing as possible purchasers of property; court upheld ruse but cautioned that each case must be assessed to determine whether it falls "below an acceptable standard for the fair and honorable administration of justice"). Full judicial examination of these questions is not limited by the relatively narrow *Hashman* holding. Nedergard fails to identify any circumstances in the instant case that would necessitate refinement of *Hashman*.

The judgment is affirmed.

COLEMAN, A.C.J., and GROSSE, J., concur.

Review denied by Supreme Court September 1, 1988.