[No. F053221. Fifth Dist. Sept. 15, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERTO LUCATERO, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.

COUNSEL

Maureen L. Fox, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Brook Bennigson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WISEMAN, Acting P. J.**—A police officer, acting on information given to him by an untested informant, posed as a prospective home buyer in order to go with a real estate agent inside a home that was listed for sale. While inside, the officer was able to corroborate details given to him by the informant and, armed with this information, later to obtain a warrant enabling him to search the home for drugs. He did not tell the real estate agent his real reason for wanting to see the home. Based on the totality of the circumstances, we conclude there is no violation of the Fourth Amendment and affirm the judgment.

## *PROCEDURAL AND FACTUAL HISTORIES*

On August 18, 2006, Porterville police officers arrested a man who was found to be in possession of over one ounce of methamphetamine. The man agreed to provide information to the police as a confidential informant. He told the officers that he obtained the drugs at a home located on Larson Street. The informant described the house as pinkish in color, with a detached garage on the west side of the lot. There was a green Nissan Altima in the garage. The informant said he saw two large white plastic bags in the trunk containing about four pounds of methamphetamine. The house was vacant, but the informant said there was an unknown Hispanic male sleeping in the garage in a sleeping bag located on a wooden shelf.

Detective Michael Benas, acting on the information given by the informant, went to Larson Street and found the house. He observed a "for sale" sign on the property. He called the listed realtor and "acted interested in the house." The realtor agreed to meet Benas there and show him the house. Inside, Benas confirmed the presence of the green Altima and the sleeping bag on a wooden shelf.

Armed with this information, the detective sought and obtained a search warrant. Appellant Alberto Lucatero and another man were present when the residence was searched. The officers found drugs hidden in the attic and in the Altima in a compartment where the passenger airbag was supposed to be located. They also found methamphetamine in a black duffel bag just inside the back door. The bag contained an identification card belonging to Lucatero. Lucatero had one gram of methamphetamine on his person. The owner of the house said he was in the process of selling the house and that Lucatero was staying there to protect against break-ins.

Lucatero was charged with possession of methamphetamine for sale and use of a false compartment with the intent to conceal a controlled substance. The information alleged that Lucatero had served a prior prison term, had been convicted of a prior strike offense, and had possessed at the time of his arrest more than 28.5 grams of methamphetamine for sale.

The warrant and supporting affidavit were sealed to protect the identity of the confidential informant. Lucatero filed a motion to traverse and quash the search warrant and to unseal the warrant and affidavit pursuant to *People v. Hobbs* (1994) 7 Cal.4th 948 [30 Cal.Rptr.2d 651, 873 P.2d 1246]. The motion alleged generally that the warrant lacked probable cause and the evidence discovered was the tainted product of a search conducted under the authority of an invalid warrant. The trial court conducted an in camera review and concluded that there was sufficient probable cause to support the warrant, but

ordered that the affidavit supporting the warrant be released to Lucatero. The ruling on the motion was stayed for one week to allow the prosecutor to decide whether to release the information to Lucatero or dismiss the charges. The prosecutor decided to go forward and the court ordered the warrant and its affidavit unsealed. A copy was provided to Lucatero.

On April 26, 2007, Lucatero entered a plea of no contest to the offenses as charged and admitted the allegations of the information. Pursuant to the indicated sentence, Lucatero was sentenced to a total term of five years eight months in state prison.

## *DISCUSSION*

### *I. Motion to suppress*

On appeal from the denial of a motion to suppress, we defer to the trial court's factual findings, express or implied, where supported by substantial evidence and exercise our independent judgment in determining whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment. (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729]; see also *Ornelas v. United States* (1996) 517 U.S. 690, 699 [134 L.Ed.2d 911, 116 S.Ct. 1657].)

██ To be constitutional, the entry of a residence by police absent emergency circumstances must be under the authority of a search warrant, based on a valid consent, or be incident to a lawful arrest. (*People v. Mesaris* (1970) 14 Cal.App.3d 71, 74 [91 Cal.Rptr. 837].) In this case, law enforcement entered the house twice. The first entry occurred when Detective Benas entered with the realtor, hoping to confirm the information given to him by the untested confidential informant. ██ The information obtained from an untested confidential informant must be independently corroborated. (*People v. Clark* (1992) 3 Cal.4th 41, 141 [10 Cal.Rptr.2d 554, 833 P.2d 561]; *People v. Johnson* (1990) 220 Cal.App.3d 742, 749 [270 Cal.Rptr. 70], disapproved on other grounds in *People v. Camarella* (1991) 54 Cal.3d 592, 606, fn. 6 [286 Cal.Rptr. 780, 818 P.2d 63] [corroboration sufficient if police investigation uncovered probative indications of criminal activity along lines suggested by informant; even seemingly innocent activity can provide sufficient corroboration if informant casts activity in suspicious light].) The second entry occurred when Benas entered on the authority of the search warrant, issued in part based on information obtained in the first entry.

██ Lucatero contends that the first entry was unlawful because it was based on a ruse. Since there is no independent source of corroborating information to support the information given by the untested informant and

no independent information to support probable cause, the validity of the warrant, and therefore the second entry, rests entirely on the legality of the first entry. A search warrant obtained upon information acquired by an illegal search is invalid, unless the prosecution can show that no information gained from the illegal entry affected the magistrate's decision to grant the warrant. In other words, the probable cause supporting the warrant's issuance must be from an independent source, not a product of the unlawful activity. (See *People v. Weiss* (1999) 20 Cal.4th 1073, 1080–1082 [86 Cal.Rptr.2d 337, 978 P.2d 1257]; *People v. Chapman* (1984) 36 Cal.3d 98, 113 [201 Cal.Rptr. 628, 679 P.2d 62].) We must therefore start our analysis with the first entry.

Lucatero claims *People v. De Caro* (1981) 123 Cal.App.3d 454 [176 Cal.Rptr. 509] (*De Caro*), which involves similar facts, controls. In *De Caro*, law enforcement arranged to have an insurance investigator, posing as a potential buyer, enter a house to look for items previously reported stolen. The investigator saw the items that had been allegedly stolen in the house, and this information was included in the application for a search warrant. One of the contentions on appeal from the subsequent conviction was that the search warrant and its evidentiary harvest should have been suppressed because the investigator, like Detective Benas, used the ruse of being a potential home buyer to gain entry. The prosecution countered that the entry was consensual because the homeowner had authorized public entry into the house by listing the house for sale. The court rejected this argument, however, concluding that, by listing the house for sale, the homeowner's invitation to enter the house was only for a limited and specific purpose, that of permitting the real estate agent to bring in bona fide potential purchasers. The court reasoned that the homeowners retained a legitimate expectation that their home would not be entered by an agent of the police, absent compulsion by the legal process. (*Id.* at p. 466.) Since the investigator was not a bona fide potential buyer, the court concluded the search was by ruse and therefore unlawful.

The Attorney General concedes that *De Caro* governs this case, but argues that the second entry is valid under the good faith exception to the exclusionary rule established in *United States v. Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405], because a reasonable officer could not have determined that the first entry was illegal and that Detective Benas did not hide any of the facts from the magistrate issuing the warrant.[1]

---

[1] The Attorney General also "questions" in footnote 17 of respondent's brief whether Lucatero has waived any challenge to the court's denial of the motion to suppress by failing to file a second motion after the contents of the search warrant and supporting declaration were released in order to develop a full record. We reject this contention. A footnote is not a proper place to raise an argument on appeal. (See *Building Maintenance Service Co. v. AIL Systems,*

█ We reject the concession that *De Caro* controls and disagree with its observations concerning the legality of the entry. An observation unnecessary to the decision of a court does not constitute binding precedent. (*Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891, 902 [160 Cal.Rptr. 124, 603 P.2d 41].) The *De Caro* court decided the case by determining there was independent evidence to support the search warrant regardless of whether the insurance investigator's ruse was lawful. (*De Caro, supra,* 123 Cal.App.3d at p. 465; see also *People v. Weiss, supra,* 20 Cal.4th at p. 1082 [reviewing court must uphold warrant if, after excising all tainted information, remaining information in warrant application establishes probable cause].) Given that the warrant was supported by independent evidence not yielded by or tainted by the investigator's entry, the court was not required to determine the legality of the investigator's entry.

In addition, we do not believe the dicta in *De Caro* to be compelling. The court's analysis of whether law enforcement may constitutionally enter a home listed for sale and pose as a potential buyer did not thoroughly consider the relevant state or federal authority allowing an officer to pose as someone other than police in the process of an investigation. (Cf. *Smith v. County of Los Angeles* (1989) 214 Cal.App.3d 266, 297 [262 Cal.Rptr. 754] [dicta carries persuasive weight when it demonstrates *thorough analysis* of issue or reflects compelling logic].) For example, there was no discussion of the leading United States Supreme Court authority governing the use of ruse in police investigations for Fourth Amendment purposes, *Lewis v. United States* (1966) 385 U.S. 206, 208–209 [17 L.Ed.2d 312, 87 S.Ct. 424]. At least one additional case, *People v. Jaquez* (1985) 163 Cal.App.3d 918, 929 [209 Cal.Rptr. 852] (*Jaquez*), has recognized that the *De Caro* analysis is dicta.

In *Jaquez,* a realtor entered the house with bona fide potential purchasers. Once inside, the realtor saw an abnormal amount of electronic equipment. She suspected that the items were stolen and called the police. The police asked her if she would meet them at the house and allow entry. The realtor agreed to do so. The officers entered without the authority of a search warrant, conducted an extensive search, and seized the property suspected of being stolen. The issue was whether the property was seized lawfully. The court properly concluded it had not been. The realtor did not have authority from the owner or tenant of the property to grant access to police for the purpose of searching and seizing stolen property without the need of a warrant. The realtor knew the officers were not prospective buyers and knew that the entry was for the sole purpose of investigating and acting upon the

---

*Inc.* (1997) 55 Cal.App.4th 1014, 1028 [64 Cal.Rptr.2d 353] [court need not address appellant's contention made only in footnote near end of opening brief].) The motion to suppress filed by Lucatero was sufficient to preserve the issue because it challenged the legality of the search warrant obtained. The record created as a result of the motion is sufficient to review the trial court's implied finding that Benas's first entry into the residence was lawful.

realtor's suspicions that the property was stolen. (*Jaquez, supra,* 163 Cal.App.3d at p. 929.) There was no ruse. The realtor's act simply exceeded the authority given. She reported what she saw to police and used her limited consent to enter the house to facilitate the officers' entry. The realtor's conduct went beyond what is reasonable and could not constitutionally be justified by the homeowner's consent.

■ In contrast, the realtor in this case did not know that Benas was a law enforcement officer and did not invite Benas in for investigative purposes. Although Benas misrepresented his identity (or failed to reveal it; the record is unclear), he did not act inconsistently with the consent given. Once inside, he acted as a potential buyer, seeing no more than any other potential buyer would see. As the court in *Jaquez* noted, the authority of a realtor to permit entry is not limited to actual bona fide potential purchasers; the agent's authority is not vitiated by some secret, deceptive intent harbored in the mind of the person posing as a potential buyer. (*Jaquez, supra,* 163 Cal.App.3d at p. 929.) After all, not all persons who ask to see a listed house are seriously considering a purchase of the home. Some are doing market comparisons; some are doing research for future home-purchasing decisions; some know they cannot afford the home viewed; and some are acting on a whim or are simply curious. In this case, Benas merely confirmed that the inside of the house and garage were as reported by the confidential informant.

■ In these limited circumstances, there is no constitutional violation undermining the validity and authority of the search warrant issued. We find an investigating officer may pose as a potential buyer and enter a home under this misrepresentation, assuming the officer's actions do not exceed the scope of the consent. The officer must act as a potential buyer and do nothing that would violate the homeowner's legitimately held privacy expectations, as defined in the context of the homeowner's general invitation to members of the public to view the interior of the home for purposes of marketing the home.

■ We find support for our conclusion in a long line of cases beginning with *Lewis v. United States, supra,* 385 U.S. 206. In *Lewis,* a federal narcotics agent, by misrepresenting his identity as a potential buyer of narcotics, was invited into the defendant's home. The *Lewis* court acknowledged that the invitation to enter would not have been extended had the defendant been told the potential buyer was in fact an undercover officer. The court rejected as a general rule law enforcement must never constitutionally use ruse or trick during the investigation of criminal offenses. Instead, the court repeated the general rule governing Fourth Amendment challenges: "[T]he particular circumstances of each case govern the admissibility of evidence obtained by stratagem or deception." (*Lewis v. United States, supra,* at p. 208.)

A court, in reviewing the validity of an entry by ruse, applies the reasonableness standard commonplace in a Fourth Amendment analysis. The government's actions must always be tested against what is reasonable in light of the totality of the circumstances, weighing the invasion of a privacy interest recognized by society against the governmental interest involved. (*Samson v. California* (2006) 547 U.S. 843, 848 [165 L.Ed.2d 250, 126 S.Ct. 2193].) The court in *Lewis* acknowledged that the detection of many types of crimes requires the use of decoys and the concealing of an officer's true identity and purpose. (*Lewis v. United States, supra,* 385 U.S. at p. 210; see also *Jacobson v. United States* (1992) 503 U.S. 540, 548 [118 L.Ed.2d 174, 112 S.Ct. 1535]; *United States v. Wright* (8th Cir. 1981) 641 F.2d 602, 604–605 [recognizing necessity for undercover operations].) Without law enforcement's ability to use undercover officers and deceptive practices, many crimes would become undetectable. Under these circumstances, a government agent is not always compelled to reveal his identity (*Lewis v. United States, supra,* at p. 211) as it is not the deception that is constitutionally prohibited—it is the unreasonable invasion of a recognizable privacy interest (U.S. Const., 4th Amend.). The court in *Lewis* reiterated the rule that "[a] government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant." (*Lewis v. United States, supra,* 385 U.S. at p. 211.) Listing a home with a realtor is an invitation to do business with the public. "What is observable by the public is observable, without a warrant, by the Government . . . as well." (*Marshall v. Barlow's, Inc.* (1978) 436 U.S. 307, 315 [56 L.Ed.2d 305, 98 S.Ct. 1816].)

The homeowner had already given limited consent when Benas sought entry. The homeowner had listed the house for sale and undoubtedly contemplated that members of the public interested in the house, whether bona fide potential buyers or not, could and would be entering the home in the company of a realtor to view the house and its interior. (See, e.g., *Katz v. United States* (1967) 389 U.S. 347, 351 [19 L.Ed.2d 576, 88 S.Ct. 507] [what a person knowingly exposes to public, even in own home, is not subject to 4th Amend. protection].) No ruse was used to obtain the invitation to enter or to define the privacy right at stake. (Compare *U.S. v. Bosse* (9th Cir. 1990) 898 F.2d 113, 115 [officer tags along with licensing inspector] and *People v. Mesaris, supra,* 14 Cal.App.3d at pp. 73–74 [officer receives call from repairman who reports seeing two bags of marijuana in refrigerator; officer comes to house and gains consent to enter by asking to see repairman] with *State v. Nedergard* (1988) 51 Wn.App. 304 [753 P.2d 526, 529] [search upheld after officers received information that marijuana being grown in house, went to house, saw "for sale" sign, and sought entry as prospective buyers]; see also *State v. Poland* (1982) 132 Ariz. 269 [645 P.2d 784] [agent saw what any prospective buyer would see; search valid despite deception]; *U.S. v. Spars* (D.Minn. 1986)

657 F.Supp. 730, 731 [two FBI agents assume role of prospective buyers and enter home with realtor; homeowner permitted tour of residence based upon representations that agents were potential home buyers; court assumed consent would not have been given had agents' true identities been known; search upheld]; see also generally 4 LaFave, Search and Seizure (4th ed. 2004) § 8.2(m), pp. 124–132.)

Benas concealed his identity as a law enforcement agent when he expressed interest in the house, but he did not use the ruse to gain consent to enter, and he did not exceed the scope of the consent. He entered the home as a prospective buyer would and limited his activities once inside to that of a prospective buyer. Benas seized no property and did not conduct a generalized criminal investigation. (*United States v. Glassel* (9th Cir. 1973) 488 F.2d 143, 145 [invited in to purchase cocaine, officer, although he did not reveal his authority, did nothing outside scope of invitation]; cf. *United States v. Guidry* (6th Cir. 1976) 534 F.2d 1220, 1222 [entry may have been legitimate, but agent's surreptitious seizure of paper from printing press was not].) Benas was not acting randomly or on mere conjecture. An informant, who had been arrested while in possession of drugs on his person, had told him there were drugs in the house. (See *U.S. v. Maldonado Garcia* (D.P.R. 1987) 655 F.Supp. 1363, 1367 [officers cannot use ruse to gain access unless they have more than mere conjecture that criminal activity is underway].)

Benas's pose as a prospective home buyer is the only feature in this case that distinguishes his actions from those of a true prospective buyer. (See *Northside Realty Associates, Inc. v. U. S.* (5th Cir. 1979) 605 F.2d 1348, 1355 [law enforcement agents entering real estate office did no more than what any member of home-buying public is invited to do; office opened itself up to public for these types of visits and cannot complain that privacy interest has been thwarted].) The element of deceit had no significant effect here because it did not diminish or violate the homeowner's legitimate expectation of privacy. This is not a case in which the officer is invited in under the ruse that he is a meter reader, and then does not read the meter, or that he is a friend of the repairman, but then engages in investigatory behavior inconsistent with a friend's visit. (See *State v. Nedergard, supra,* 753 P.2d at p. 529 [key to ruse entries is whether law enforcement officer's acts fall within consent given generally, even if consent would not have been given had defendant known officer's identity].) Benas did not violate any reasonably held expectation of privacy when he entered the home as a prospective buyer. We hold that his actions were reasonable under the Fourth Amendment.

*II.   Prior strike*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Levy, J., and Kane, J., concurred.

A petition for a rehearing was denied October 8, 2008, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied December 10, 2008, S167551.

---

[*]See footnote, *ante*, page 1110.