Filed 2/6/18

**FOR PUBLICATION IN THE OFFICIAL REPORTS**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LUIS GONZALEZ, | B272344 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. BC542498) |
| v. | |
| JOHN R. MATHIS et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gerald Rosenberg, Judge. Reversed.

Evan D. Marshall, for Plaintiff and Appellant.

Latham & Watkins, Marvin S. Putnam, Jessica Stebbins and Robert J. Ellison, for Defendants and Respondents.

———————————

Luis Gonzalez, a professional window washer, filed a premises liability action against John Mathis. Mathis moved for summary judgment, arguing that Gonzalez's status as an independent contractor precluded his claims. The trial court granted the motion. We reverse, concluding there are triable issues of fact whether Mathis can be held liable for Gonzalez's injuries.

## FACTUAL BACKGROUND

### A. *Summary of Mathis's Property*

Defendant John Mathis owned a residence that contained an indoor pool. The pool was located in the northwest corner of the home, and covered by a large, rounded skylight that protruded through the flat roof. The section of roof located to the west of the skylight was divided by a three-foot-high parapet wall that ran parallel to the skylight. The area of roof between the skylight and the east side of the parapet wall was partially obstructed by a series of ventilation pipes and mechanical equipment. The area of roof on the west side of the parapet wall consisted of an exposed ledge, approximately two feet in width. Mathis had constructed the parapet wall to screen from view the piping and mechanical equipment positioned next to the skylight.

A ladder affixed to the west side of the house provided access to the roof. The top of the ladder was located near the beginning of the parapet wall.

### B. *Gonzalez's Accident*

Plaintiff Luis Gonzalez owned and operated Hollywood Hills Window Cleaning Company, which advertised itself as a specialist in "hard to reach windows and skylights." Beginning in 2007, Mathis's housekeeper, Marcia Carrasco, regularly hired

2

Gonzalez's company to wash the skylight and perform other services on the property.

On August 1, 2012, two of Gonzalez's employees were on the roof cleaning the skylight when Carrasco informed him water was leaking into the house. Carrasco instructed Gonzalez to go on the roof, and tell his employees they should use less water. Gonzalez climbed onto the roof using the affixed ladder. He then walked along the ledge on the west side of the parapet wall, and spoke with his employees. While walking back toward the ladder along the ledge, Gonzalez lost his footing, and fell off the roof.

### C. Trial Court Proceedings

#### 1. Summary of complaint and Gonzalez's deposition

In April of 2014, Gonzalez filed a negligence action against Mathis asserting that "loose rocks, pebbles and sand on the roof of the property" constituted a "dangerous condition" that had caused Gonzalez to fall. In a subsequent interrogatory response, Gonzalez clarified he was seeking damages for three dangerous conditions on the roof. First, he alleged that the construction of the parapet wall forced persons who needed to access the skylight and other parts of the roof to walk along the exposed two-foot ledge, which had no safety railing. Second, he contended the roofing shingles were dilapidated, resulting in slippery and loose conditions. Third, he asserted the roof lacked "tie-off" points that would enable maintenance workers to secure themselves with ropes or harnesses.

At his deposition, Gonzalez testified that he had been on Mathis's roof many times, and had always used the ledge along the west side of the parapet wall to access the skylight. Gonzalez further testified that he knew the roof shingles were dilapidated

3

and slippery, and had told Carrasco the shingles should be replaced. Gonzalez also admitted he knew the ledge lacked any protective features, and that the roof had no tie-off points.

When asked why he had chosen to walk along the ledge outside the parapet wall, rather than in the area inside the wall, Gonzalez explained that the ledge was "the only way to get through because you have the AC equipment [on the other side]." Gonzalez later clarified that he was unable to walk in the area of roof inside the parapet wall because "there was a lot of equipment," and he "couldn't fit in there." Gonzalez also testified that he and his employees had always walked along the ledge, rather than inside the parapet wall, and that he had never seen anyone walk inside the wall.

### 2. Mathis's motion for summary judgment

Mathis filed a motion for summary judgment arguing that Gonzalez's claims were precluded under the rule set forth in *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*) and its progeny, which generally prohibits an independent contractor or his employees from suing the hirer of the contractor for workplace injuries. (See *SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590, 594 ["Generally, when employees of independent contractors are injured in the workplace, they cannot sue the party that hired the contractor to do the work"]; *Tverberg v. Fillner Const., Inc.* (2010) 49 Cal.4th 518, 521 (*Tverberg*) [the hiring party is generally not liable for workplace injuries suffered by an independent contractor or the contractor's employees].)

Mathis argued there were only two exceptions to the *Privette* rule: when the hirer exercised control over the contractor's work in a manner that had contributed to the injury

4

(see *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198 (*Hooker*),) and when the hirer failed to warn the contractor of a concealed hazard on the premises. (See *Kinsman v. Unocol Corp.* (2005) 37 Cal.4th 659 (*Kinsman*).) Mathis contended neither exception applied because Gonzalez had specifically admitted that he was not told how to clean the skylight, and that he was aware of the dangerous conditions on the roof.

In his opposition, Gonzalez acknowledged he was an independent contractor, but argued there were triable issues of fact pertaining to both *Privette* exceptions. First, Gonzalez asserted there were "disputed issues of material fact as to whether [Mathis] retained control over the worksite." Gonzalez cited evidence showing Carrasco had directed him to perform various cleaning tasks in a specified order, and had also ordered him to get on the roof to tell his employees to use less water. Gonzalez also argued Mathis had retained control because he was the only party who had authority to fix the dangerous conditions on the roof.

Alternatively, Gonzalez argued there were triable issues of fact whether Mathis was liable under the hazardous condition exception set forth in *Kinsman*, *supra,* 37 Cal.4th 659. Gonzalez contended that, contrary to Mathis's assertion, *Kinsman* permitted hirer liability for concealed hazards, as well as open or known hazards the contractor could not have remedied through the adoption of reasonable safety precautions. Gonzalez further asserted that although he was aware of the dangerous conditions on the roof (namely, the exposed ledge and dilapidated shingles), there were disputed issues of fact whether he could have reasonably avoided those hazards. In support, he cited to his deposition testimony that he had walked along the ledge outside

the parapet wall because the piping and mechanical equipment positioned next to the skylight prevented him from walking inside the wall. According to Gonzalez, these statements raised triable issues of fact whether he was required to "access the skylights [by] . . . walk[ing] across the slippery, unprotected and narrow catwalk," or whether it was "feasible to go [along the other side of] the wall."

In his reply brief, Mathis argued that Carrasco's statements to Gonzalez were insufficient to show Mathis had retained control over the manner in which Gonzalez cleaned the skylight. Mathis also argued that merely retaining the authority to remedy the conditions on the roof, without actually exercising that authority in some manner that contributed to Gonzalez's injury, was insufficient to impose liability pursuant to the retained control theory.

Mathis disputed the assertion that *Kinsman* permits hirer liability for open hazards. He also argued that even if *Kinsman* did extend to open hazards the contractor could not have remedied through reasonable safety precautions, the evidence showed Gonzalez could have avoided the dangerous conditions on the roof by walking inside the parapet wall. In support, Mathis submitted photographs and a video that had been taken during an inspection of Mathis's roof. The visual evidence showed multiple people climb the ladder attached to the west side of the house, and then traverse the section of roof inside the parapet wall by stepping over and around the ventilation pipes and other mechanical equipment. According to Mathis, "[t]he video and photographic evidence conclusively establish[ed]" that Gonzalez's statements that he was required to walk along the ledge were false, and should be disregarded.

6

At the hearing, the court informed the parties that its tentative ruling was to grant the motion for summary judgment pursuant to *Privette, supra,* 5 Cal.4th 689, and *Kinsman, supra,* 37 Cal.4th 659. The court explained that the evidence showed Mathis's agent had "told" Gonzalez "to clean the skylight and to access the roof by way of the ladder. The agent also told [him] there had been leaks on the roof. These instructions or statements by the agent do not establish that [Mathis] had control over the worksite. Gonzalez had walked on the narrow walkway many times before the fall. . . . [He] knew of the [dangerous] conditions on the roof. . . . None of the conditions were concealed to [him]."

Gonzalez's counsel argued that the court's proposed ruling failed to address that Mathis was the only party who had the authority to remedy the injury-causing conditions on the roof. According to counsel, Gonzalez had been unable to mitigate those hazards because "[h]e [was] simply there to clean," and because Mathis never "delegated that key safety measure of redoing the roof to [him]."

Gonzalez's counsel also argued that although plaintiff was aware of the dangerous conditions on the roof, there was nonetheless a question of fact whether he could have reasonably avoided those conditions: "In order to do the job, [Gonzalez] had to go [out onto the ledge]. And that's something for the jury to deal with. . . . Because [Mathis is] saying [Gonzalez] knew about it, he encountered the danger. But [Gonzalez] couldn't do it any other way." Counsel further asserted that while Mathis "[wanted] the court to rule on this fact . . . [based on the video] submitted in reply," the evidence was not conclusive. After hearing argument, the court adopted its tentative order, granted

7

Mathis's motion for summary judgment and entered a judgment in his favor.

## DISCUSSION

### A. Standard of Review

"A motion for summary judgment is properly granted only when 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.]  We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. [Citation.]"  (*Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1301 (*Chavez*) [footnote omitted]; see also Code of Civ. Proc., § 437c, subd. (c); *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348].)  In making this assessment, "[w]e view the evidence in the light most favorable to the opposing party, liberally construing the opposing party's evidence and strictly scrutinizing the moving party's." [Citation.]"  (*Chavez, supra,* 207 Cal.App.4th at p. 1302.)

### B. Summary of the <u>Privette</u> Doctrine

Under the common law "'doctrine of peculiar risk, a person who hires an independent contractor to do inherently dangerous work can be held liable for tort damages when the contractor causes injury to others by negligently performing the work.  The doctrine serves to ensure that innocent bystanders or neighboring landowners injured by the hired contractor's negligence will have a source of compensation even if the contractor turns out to be insolvent.'"  (*Hooker, supra,* 27 Cal.4th at p. 204.)

8

In *Privette, supra*, 5 Cal.4th 689, the California Supreme Court limited the breadth of the peculiar risk doctrine, concluding that it "does not extend to a hired contractor's employees." (*Hooker, supra,* 27 Cal.4th at p. 204 [summarizing holding in *Privette*].) The Court reasoned that "[b]ecause the Workers' Compensation Act [citation] shields an independent contractor from tort liability to its employees, applying the peculiar risk doctrine to the independent contractor's employees would illogically and unfairly subject the hiring person, who did nothing to create the risk that caused the injury, to greater liability than that faced by the independent contractor whose negligence caused the employee's injury. [Citation.] . . . . '[T]he property owner should not have to pay for injuries caused by the contractor's negligent performance of the work when workers' compensation statutes already cover those injuries.' [Citation]." (*Hooker, supra,* 27 Cal.4th at p. 204.)

In subsequent cases, the Court established two exceptions to the "*Privette* doctrine." (*Kinsman, supra*, 37 Cal.4th at p. 666.) In *Hooker, supra*, 27 Cal.4th 198, the Court considered whether a hirer may be held liable to a contractor's employees under the "'retained control theory' as described in the Restatement Second of Torts, section 414, which states: 'One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.'" (*Kinsman, supra*, 37 Cal.4th at p. 670 [summarizing holding in *Hooker*].)

The defendant in *Hooker* argued the term "others" should not be read to include "a contractor's employees," and that such

9

employees should be barred from recovery "even when the hirer retains control over safety conditions." (*Kinsman*, supra, 37 Cal.4th at p. 670.)  The Court disagreed, explaining that *Privette* was predicated in part on "'the recognition that a person who [has] hired an independent contractor ha[s] "'no right of control as to the mode of doing the work contracted for.'"'  On the other hand, if a hirer does retain control over safety conditions at a worksite and negligently exercises that control in a manner that affirmatively contributes to an employee's injuries, it is only fair to impose liability on the hirer." (*Hooker*, *supra*, 27 Cal.4th at p. 213.)

The Court clarified, however, that "it would be unfair to impose tort liability on the hirer of the contractor merely because the hirer retained the ability to exercise control over safety at the worksite.  In fairness, . . . the imposition of tort liability on a hirer should depend on whether the hirer exercised the control that was retained in a manner that affirmatively contributed to the injury of the contractor's employee." (*Hooker*, *supra*, 27 Cal.4th at p. 210.)  Thus, under *Hooker*, "a hirer of an independent contractor is not liable to an employee of the contractor merely because the hirer retained control over safety conditions at a worksite, but . . . is liable . . . insofar as a hirer's exercise of retained control affirmatively contributed to the employee's injuries." (*Id*. at p. 202.)

In *Kinsman*, 37 Cal.4th 659, the Court considered whether a hirer who did not retain control over worksite conditions could nonetheless be held "liable to an employee of [a] contractor who is injured as the result of hazardous conditions on the landowner's premises." (*Id*. at p. 664.)  The plaintiff in *Kinsman* was exposed to airborne asbestos while working for a contractor who had been

10

hired to perform maintenance at a refinery. After developing mesothelioma, the plaintiff filed a personal injury action against the refinery alleging that: (1) the refinery was negligent in the exercise of the control it had retained over plaintiff's work; and (2) the refinery was negligent in exposing plaintiff to a concealed hazardous condition at the workplace (asbestos). The jury rejected the first theory of liability, but awarded the plaintiff damages for exposure to a hazardous condition. The Court of Appeal reversed, concluding that under *Privette* and *Hooker*, the refinery could not be held liable to "a contractor's employee . . . under [a premises liability] theory unless the landowner had [retained] control over the dangerous condition and affirmatively contributed to the employee's injury." (*Id*. at p. 666.) The Supreme Court granted review to assess how the "doctrine of landowner liability . . . relates to the *Privette* doctrine." (*Id*. at p. 672.)

The Court began its analysis by reviewing the general principles that govern a landowner's liability for hazards on the premises. The Court explained that a landowner normally has a duty to warn of concealed hazards that present "an unreasonable risk of harm to those coming in contact with it." (*Kinsman*, *supra*, 37 Cal.4th at p. 672.) With respect to open hazards, the Court explained: "[I]f a danger is so obvious that a person could reasonably be expected to see it, the condition itself serves as a warning, and the landowner is under no further duty to remedy or warn of the condition. [Citation.] However, this is not true in all cases. '[I]t is foreseeable that even an obvious danger may cause injury, if the practical necessity of encountering the danger, when weighed against the apparent risk involved, is such

11

that under the circumstances, a person might choose to encounter the danger.'" (*Kinsman*, *supra*, 37 Cal.4th at p. 673.)

The Court then addressed "how these general principles apply when a landowner hires an independent contractor whose employee is injured by a hazardous condition on the premises." (*Kinsman*, *supra*, 37 Cal.4th at p. 673.) The Court concluded that under the reasoning of *Privette* and *Hooker*, "a hirer generally delegates to the contractor responsibility for supervising the job, including responsibility for looking after employee safety. When the hirer is also a landowner, part of that delegation includes taking proper precautions to protect against obvious hazards in the workplace. There may be situations, as alluded to . . . above, in which an obvious hazard, for which no warning is necessary, nonetheless gives rise to a duty on a landowner's part to remedy the hazard because knowledge of the hazard is inadequate to prevent injury. . . . Thus, when there is a known safety hazard on a hirer's premises that can be addressed through reasonable safety precautions on the part of the independent contractor, a corollary of *Privette* and its progeny is that the hirer generally delegates the responsibility to take such precautions to the contractor, and is not liable to the contractor's employee if the contractor fails to do so." (*Id*. at pp. 673-674.)

The Court noted that in the case before it, the plaintiff had "acknowledge[d] that reasonable safety precautions against the hazard of asbestos were readily available, such as wearing an inexpensive respirator." (*Kinsman*, *supra*, 37 Cal.4th at p. 673.) The plaintiff's theory, however, was that the refinery could be held liable because the refinery knew (or should have known) of the risks of asbestos, but failed to warn the contractor.

The Court agreed, explaining: "A landowner cannot effectively delegate to the contractor responsibility for the safety of its employees if it fails to disclose critical information needed to fulfill that responsibility, and therefore the landowner would be liable to the contractor's employee if the employee's injury is attributable to an undisclosed hazard. . . . [¶] . . . [¶] We therefore disagree with the Court of Appeal in the present case inasmuch as it held that a landowner/hirer can be liable to a contractor's employee only when it has retained supervisory control and affirmatively contributes to the employee's injury in the exercise of that control. Rather, . . . the hirer as landowner may be independently liable to the contractor's employee, even if it does not retain control over the work, if (1) it knows or reasonably should know of a concealed, pre-existing hazardous condition on its premises; (2) the contractor does not know and could not reasonably ascertain the condition; and (3) the landowner fails to warn the contractor." (*Kinsman*, *supra*, 37 Cal.4th at p. 674-675.) Thus, "when, . . . the 'dangerous or defective condition' is one that can be remedied by taking reasonable safety precautions, the landowner who has delegated job safety to the independent contractor only has a duty to the employee if the condition is concealed." (*Id*. at p. 682.)

Finally, in *Tverberg, supra,* 49 Cal.4th 518, the Court addressed whether the *Privette* doctrine extends to claims an independent contractor brings against a hirer on his or her own behalf. The Court of Appeal concluded *Privette* did not apply to such claims because, unlike his or her employees, an independent contractor is not subject to mandatory coverage for workplace injuries under California's workers' compensation system.

13

The Supreme Court reversed, holding that although "the availability of workers' compensation insurance . . . was central to [*Privette's*] holding that the hirer should not incur . . . liability for on-the-job injury to an independent contractor's employee," (*Tverberg, supra,* 49 Cal.4th 527), a different rationale warranted extension of the rule to claims brought by a contractor: "Unlike a mere employee, an independent contractor, by virtue of the contract, has authority to determine the manner in which inherently dangerous construction work is to be performed, and thus assumes legal responsibility for carrying out the contracted work, including the taking of workplace safety precautions. Having assumed responsibility for workplace safety, an independent contractor may not hold a hiring party vicariously liable for injuries resulting from the contractor's own failure to effectively guard against risks inherent in the contracted work." (*Id*. at p. 521.)

### C. Mathis Failed to Establish Gonzalez's Claims Are Precluded Under the <u>Privette</u> Doctrine

Gonzalez argues the trial court erred in concluding his claims are precluded under the *Privette* doctrine. Gonzalez does not dispute Mathis hired him as an independent contractor, and that his claims are therefore subject to *Privette* and its progeny. He contends, however, that there are triable issues of fact whether Mathis can be held liable under the "retained control" exception set forth in *Hooker*, and the "hazardous condition" exception set forth in *Kinsman*.

> 1. *Gonzalez failed to present evidence showing there is a triable issue of fact regarding the retained control exception*

14

At his deposition, Gonzalez admitted that Mathis and Carrasco had never told him how he should clean the skylight. Despite this admission, Gonzalez asserts that two categories of evidence nonetheless show there is a triable issue of fact whether Mathis retained control over the manner and means of Gonzalez's work.

First, Gonzalez argues that statements Carrasco made to him on the day of the incident demonstrate retained control. Specifically, he cites evidence showing that Carrasco told him what order he should perform "the various projects [he] had been hired for," and also instructed him to tell his employees they should use less water to clean the skylight. Neither statement is sufficient to establish that Mathis "retained control" within the meaning of *Hooker*.

The first statement merely shows Carrasco specified when Gonzalez should clean the skylight in relation to the other tasks he had been hired to perform; it does not demonstrate Mathis retained control of how Gonzalez cleaned the skylight. Carrasco's second statement suggests Mathis did retain some level of control over the amount of water that should be used to clean the skylight. Gonzalez, however, has presented no argument explaining how Carrasco's instruction to use less water "affirmatively contributed" to the injuries he suffered. (See *Kinsman*, *supra*, 37 Cal.4th at p. 671 [under retained control exception, "when the hirer . . . actively participates in how the job is done, and that participation affirmatively contributes to the employee's injury, the hirer may be liable in tort to the employee"]; *Evard v. Southern California Edison* (2007) 153 Cal.App.4th 137, 145 ["the hirer must do more than retain control over worksite safety conditions. The hirer must exercise that

15

retained control 'in a manner that affirmatively contributed to the injury of the contractor's employee'"].)  Gonzalez has alleged his injury occurred because the configuration of the roof forced him to walk along the exposed ledge, not because of the amount of water his employees used to wash the skylight.  There is no evidence Mathis or Carrasco ever directed him to walk on the ledge.

Gonzalez next argues that there are triable issues regarding the retained control exception because the evidence shows Mathis was the only party who had authority to fix the dangerous conditions on the roof.  Gonzalez appears to contend that because Mathis was the only person who could have remedied the conditions, he necessarily maintained control over safety at the worksite.  As explained above, however, "retain[ing] the ability to exercise control over safety at the worksite" is not sufficient to establish liability under *Hooker*.  (*Hooker*, *supra*, 27 Cal.4th at p. 210.)  Rather, the hirer must have exercised that retained authority in a manner that affirmatively contributed to the injury.  "[P]assively permitting an unsafe condition to occur rather than directing it to occur does not constitute affirmative contribution.  [Citations.]  The failure to institute specific safety measures is not actionable unless there is some evidence that the hirer . . . had agreed to implement these measures." (*Tverberg v. Fillner Construction Inc.* (2012) 202 Cal.App.4th 1439, 1446; see also *Hooker*, *supra*, 27 Cal.4th at p. 211 [hirer not liable under retained control theory "for mere failure to exercise a general supervisory power to prevent the creation or continuation of a hazardous practice"].)  In this case, Gonzalez has presented no evidence showing that Mathis ever agreed to remedy the conditions on the roof.  Merely allowing those conditions to

16

persist is not sufficient to demonstrate retained control within the meaning of *Hooker*.

> 1. *Mathis failed to establish there is no triable issue of fact whether he can be held liable under* <u>Kinsman</u>

Gonzalez also contends there are triable issues of fact whether Mathis can be held liable under the hazardous condition exception set forth in *Kinsman*. According to Gonzalez, *Kinsman* allows hirer liability for injuries resulting from two distinct types of hazards: (1) a hazard that is known to the hirer, but concealed from the contractor; and (2) a known or open hazard that "cannot be practically avoided" by the contractor. Gonzalez further asserts that in this case, there is conflicting evidence whether he could have avoided the condition that caused his injury, namely the narrow ledge along the west side of the parapet wall.

Mathis, however, argues that *Kinsman* "apples only when 'a hazard is concealed from the contractor, but known to the landowner.'" Alternatively, Mathis asserts that even if *Kinsman* does permit hirer liability for open or known conditions that a contractor could not have reasonably avoided or remedied, the photographic and video evidence he submitted to the trial court establishes as a matter of law that Gonzalez could have traversed the roof by walking along the interior of the parapet wall, rather than along the exposed ledge.

We first address Mathis's assertion that *Kinsman* only permits hirer liability for hazardous conditions that are concealed to the contractor, and therefore precludes liability for any condition that is "'open and obvious,' or otherwise known to the contractor." *Kinsman* separately analyzes what duty a hirer owes to a contractor for concealed hazards as opposed to open or

17

known hazards. With respect to the latter, *Kinsman* explained that "when there is a known safety hazard on a hirer's premises that can be addressed through reasonable safety precautions on the part of the independent contractor, . . . the hirer generally delegates the responsibility to take such precautions to the contractor, and is not liable to the contractor's employee if the contractor fails to do so." (*Kinsman*, *supra*, 37 Cal.4th at pp. 673-674.) With respect to concealed hazards, the Court explained that liability attaches only if the condition was known to the hirer, but unknown to the contractor. Thus, according to the Court, "when . . . the 'dangerous or defective condition' is one that can be remedied by taking reasonable safety precautions, the landowner who has delegated job safety to the independent contractor only has a duty to the employee if the condition is concealed." (*Id.* at p. 682.)

*Kinsman* therefore indicates that under the "principles of delegation" set forth in *Privette* and its progeny (*Tverberg*, *supra*, 49 Cal.4th at p. 527), a hirer cannot be held liable for injuries resulting from open or known hazards the contractor could have remedied through the adoption of reasonable safety precautions.[1]

---

[1] We acknowledge that *Kinsman's* statements regarding when a hirer can be held liable for contractor injuries resulting from open hazards on the property is technically dicta because the question decided in the case involved the circumstances under which a hirer can be held liable for injuries resulting from latent hazards. (See *Stockton Theaters Inc. v. Palermo* (1956) 47 Cal.2d 469, 474 ["The discussion or determination of a point not necessary to the disposition of a question that is decisive of the appeal is generally regarded as obiter dictum . . . ."].) However, we generally consider California Supreme Court dicta to be "highly persuasive." (*People v. Wade* (1996) 48 Cal.App.4th 460,

As a corollary, the hirer can be held liable when he or she exposes a contractor (or its employees) to a known hazard that cannot be remedied through reasonable safety precautions.**2**

---

467 ["Dicta of our Supreme Court are highly persuasive"]; *Gogri v. Jack In The Box Inc.* (2008) 166 Cal.App.4th 255, 272].) "'When the Supreme Court has conducted a thorough analysis of the issues or reflects compelling logic, its dictum should be followed.' [Citation.]" (*Hubbard v. Superior Court* (1997) 66 Cal.App.4th 1163, 1169 (*Hubbard*); see also *Howard Jarvis Taxpayers Assn. v. City of Fresno* (2005) 127 Cal.App.4th 914, 925 ["Even if the court's conclusions technically constitute dicta, we will not reject dicta of the Supreme Court without a compelling reason"].) *Kinsman's* discussion and analysis of a hirer's liability for open hazards was thorough, and appears to have been "carefully drafted. It was not '. . . inadvertent, ill-considered or a matter lightly to be disregarded.' [Citation]." (*Hubbard, supra,* 66 Cal.App.4th at p. 1169.)

**2**      In portions of his brief, Gonzalez appears to argue we should interpret *Kinsman* more broadly to permit hirer liability whenever it is "foreseeable that the [open or known] danger will be encountered by the workmen." *Kinsman* did acknowledge that a landowner can generally be held liable for an open hazard when it is "'foreseeable'" that a person may "'choose to encounter the danger.'" (*Kinsman, supra,* 37 Cal.4th at p. 673.) As discussed above, however, the Court further observed that when a landowner hires an independent contractor, the hirer delegates responsibility to the contractor to remedy any open hazard that can be addressed through the adoption of reasonable safety precautions. (*Ibid.*) Thus, under *Kinsman,* a hirer's liability for injuries resulting from an open hazard is not dependent on the foreseeability that a contractor might encounter the hazard, but rather on whether the hazard was one that the contractor could have remedied through the adoption of reasonable safety precautions.

We next address whether Mathis has established as a matter of law that Gonzalez could have remedied the dangerous conditions on the roof through the adoption of reasonable safety precautions. In his deposition, Gonzalez stated that he was required to walk outside the parapet wall, along the exposed ledge, because piping and mechanical equipment prevented him from walking inside the wall. Mathis, however, asserts the video and photographic evidence "conclusively establish that Gonzalez's self-serving [statements] claiming he could not fit through the interior portion of the roof . . . is false." The photographs and video were taken during an inspection of the roof that Gonzalez's experts and lawyers conducted in October of 2015, more than three years after the incident. The images show several individuals maneuvering around the piping and electrical equipment positioned between the skylight and the parapet wall.

In premises liability actions, the reasonableness of a party's actions is generally a question of fact for the jury to decide. (See *Neel v. Mannings, Inc.* (1942) 19 Cal.2d 647, 656 [in premises liability action, "[w]hether plaintiff's action was reasonable and prudent under the circumstances was for the jury to decide as an issue of fact']; *Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1207 ["Whether a dangerous condition has existed long enough for a reasonably prudent person to have discovered it is a question of fact for the jury"]; *Carson v. Facilities Development* Co. (1984) 36 Cal.3d 830, 843 ["The questions of whether a dangerous condition could have been discovered by reasonable inspection and whether there was adequate time for preventive measures are properly left to the jury"].) Such questions "cannot be resolved by summary judgment" (*Onciano v. Golden Palace Restaurant, Inc.* (1990) 219 Cal.App.3d 385, 395) "unless reasonable minds can

come to but one conclusion." (*Peterson v. San Francisco Community College Dist*. (1984) 36 Cal.3d 799, 810.)

The video and the photographs certainly cast doubt on Gonzalez's assertion that the piping and other equipment along the skylight prevented him from walking on the inside of the parapet wall. We disagree, however, that such evidence conclusively establishes Gonzalez could have reasonably utilized that area on the date of the incident.[3] Mathis has presented no

---

[3] At oral argument, Mathis's counsel argued that the record also contained evidence establishing Gonzalez could have taken any number of alternative precautions to avoid the ledge. The only other specific precaution that counsel identified, however, consisted of placing a ladder on the east side of the house (the side opposite of where the ledge was located), and then walking across the roof to access the skylight. Mathis did not raise this argument in his appellate briefing, and raised the argument only in the reply brief he filed in the trial court proceedings. The only evidence he cited in support of the argument was Gonzalez's statement at deposition that he did not use a ladder to climb up the east side of the house because "[i]t would have been farther away to walk on the roof and to get to the same edge anyway." This single statement is insufficient to prove as a matter of law that Gonzalez could have reasonably avoided the ledge by placing a ladder on the east side of the house, and then walking across the roof. To the contrary, Gonzalez's statement that he would "get to the same edge anyway" suggests he would have been forced to encounter the ledge even if he had placed a ladder on the east side of the house.

Mathis also argues Gonzalez could have reasonably avoided the ledge by declining to accept the job altogether. Mathis presents no legal authority in support of his assertion that declining to perform a job qualifies as a reasonable safety precaution. If accepted, this argument would effectively preclude hirer liability for any injury resulting from an open or known

21

evidence that the video, taken in 2015, accurately depicts the condition of the roof as it was at the time of the incident in 2012. Nor has Mathis presented evidence negating other factors that might have affected Gonzalez's ability to traverse the area inside the parapet wall, including, for example, his size in relation to the persons depicted in the video, or whether he was required to carry equipment that rendered the pathway impassable. Standing alone, photographs and videos showing different people maneuvering along the inside of the parapet wall three years after the date of the incident is insufficient to prove as a matter of law that Gonzalez could have reasonably done the same.[4]

---

hazard because a contractor always has the option of declining to accept a job. The language of *Kinsman* indicates, however, that a hirer is immune from liability for open hazards only "when . . . the 'dangerous or defective condition' is one that can be remedied by taking reasonable safety precautions." (*Kinsman, supra,* 37 Cal.4th at p. 682.)

[4]     In a footnote to the introductory section of his respondent's brief, Mathis argues we may affirm the trial court's judgment on an alternative ground, asserting that "Gonzalez is estopped from recovery because he mispresented [sic] himself as having worker's compensation insurance, as required by California state law, and which would have compensated him for his injuries, and improperly seeks to require Mathis to compensate him for an injury that should have been covered by his own claimed insurance." Mathis's brief presents no further argument on this issue. "We . . . need not address . . . contention[s] made only in a footnote." (*Building Maintenance Service Co. v. AIL Systems, Inc.* (1997) 55 Cal.App.4th 1014, 1028; *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 71 ["We may decline to address arguments made perfunctorily and exclusively in a footnote"]; see also *People v. Lucatero* (2008) 166 Cal.App.4th

## DISPOSITION

The judgment in favor of Mathis is reversed.  Appellant shall recover his costs on appeal.

ZELON, Acting P. J.

We concur:

SEGAL, J.

BENSINGER, J.*

---

1110, 1115 ["A footnote is not a proper place to raise an argument on appeal"].)

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.